# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 5, 2019

Lyle W. Cayce
Clerk

No. 16-11330

UNITED STATES OF AMERICA,

　　　　Plaintiff - Appellee

v.

BRANDON GREGORY LEAL,

　　　　Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before DAVIS, HIGGINSON, and WILLETT, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Defendant Brandon Leal pleaded guilty to one count of transportation of child pornography in violation of 18 U.S.C. § 2252A(a)(1). The district court sentenced Leal to 240 months imprisonment and ordered Leal to pay $58,415 in restitution to "Andy," a victim depicted in Leal's materials. On appeal, Leal seeks to vacate the order of restitution, contending that it was imposed in violation of the proximate cause requirements described in *Paroline v. United States*, 572 U.S. 434 (2014). We affirm the district court.

I.

Leal stipulated that in December 2014, he traveled from Canada into the United States with electronic devices containing hundreds of images and

dozens of videos of child pornography. Some depicted sadistic acts involving children, and some depicted infants or toddlers.

In relevant part, Leal's plea agreement stated that the district court could impose a sentence including "restitution to victims or to the community, which is mandatory under the law." The agreement noted, "The defendant fully understands that the actual sentence imposed (so long as it is within the statutory maximum) is solely in the discretion of the Court." Finally, the agreement contained an appeal waiver stating in full:

> The defendant waives his rights, conferred by 28 U.S.C. § 1291 and 18 U.S.C. § 3742, to appeal his conviction, sentence, fine, order of restitution, and forfeiture order in amount to be determined by the district court. He also waives his right to contest his conviction, sentence, fine, order of restitution and forfeiture order in any collateral proceeding, including proceedings under 28 U.S.C. § 2241 and 28 U.S.C. § 2255. The defendant, however, reserves the rights (a) to challenge the voluntariness of his plea of guilty or this waiver, and (b) to bring a claim of ineffective assistance of counsel.

The Pre-Sentence Report initially found restitution inapplicable. After the PSR was completed, Andy submitted his restitution request and the government sought to amend the PSR accordingly. Two weeks before sentencing, the Probation Office filed an addendum to the PSR recommending that Leal be ordered to pay $58,415, the full amount sought by Andy.

The addendum attached the twenty-one-page restitution request submitted by Andy's attorney. The letter explained that beginning when Andy was seven and continuing until Andy was twelve, Andy was sexually abused by an older man (not Leal) who made and circulated "graphic video recordings of his sexual abuse of Andy" in which Andy was "clearly recognizable." Relying on reports from a forensic psychologist and an economist, Andy estimated that he had suffered losses of $267,038 in future psychological counseling costs and

No. 16-11330

$1,854,925 in future lost income, totaling $2,121,963 in general losses "stem[ming] from the actions of defendant Leal as well as other criminals." Andy acknowledged that Leal did not appear to be "directly connected to the initial production of his images," but had harmed Andy by possessing Andy's images.[1] Andy argued that Leal should be responsible for $25,000 of Andy's general losses. Andy also sought to recover $33,415 for the forensic psychologist's and economist's fees.

Leal was sentenced on August 15, 2016, at a consolidated sentencing hearing that combined the instant case with a related case, in which Leal had pleaded guilty to possessing child pornography and to being a felon in possession of a firearm. At sentencing, Leal confirmed that he had reviewed the PSR and the addendum and raised no objections. The district court adopted the factual contents of the PSR and addendum and ordered Leal to pay Andy $58,415 in restitution.

On August 30, 2016, Leal filed a pro se notice of appeal from "the judgment and sentences imposed by this court on August 15th, 2016." Leal's notice of appeal was timely. However, it was filed only in the related case, not in the present case, and hence arguably failed to "designate the judgment, order, or part thereof being appealed" as required by Rule 3(c)(1)(B). Fed. R. App. P. 3. We find that this omission is not a jurisdictional defect. "Courts will liberally construe the requirements of Rule 3." *Smith v. Barry*, 502 U.S. 244,

---

[1] "The consumer, or end recipient, of pornographic materials . . . caus[es] the children depicted in those materials to suffer as a result of his actions in at least three ways. . . . *First*, the simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials. . . . *Second*, the mere existence of child pornography represents an invasion of the privacy of the child depicted. . . . *Third*, the consumer of child pornography instigates the original production of child pornography by providing an economic motive for creating and distributing the materials." *United States v. Norris*, 159 F.3d 926, 929–30 (5th Cir. 1998).

No. 16-11330

248 (1992). "[A] mistake in designating a judgment appealed from should not bar an appeal as long as the intent to appeal a specific judgment can be fairly inferred and the appellee is not prejudiced or misled by the mistake." *United States v. Knowles*, 29 F.3d 947, 949 (5th Cir. 1994) (quotation omitted). Here, Leal's intent to appeal the sentence in the present case can be fairly inferred from his plural reference to the "sentences imposed . . . on August 15th, 2016," especially because pro se notices of appeal are liberally construed. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Edwards v. Joyner*, 566 F.2d 960, 961 n.3 (5th Cir. 1978). Further, the government does not argue that it has been prejudiced or misled. We are satisfied that we have jurisdiction. *See, e.g.*, *United States v. Servellon*, 534 F. App'x 252, 252 (5th Cir. 2013); *United States v. Donjuan-Gonzalez*, 268 F. App'x 276, 276–77 (5th Cir. 2008).

## II.

Title 18 U.S.C. § 2259 requires district courts to order restitution for certain child pornography offenses, including Leal's offense of transporting child pornography. The Supreme Court's decision reversing our court in *Paroline* provides that restitution is "proper under § 2259 only to the extent the defendant's offense proximately caused a victim's losses." 572 U.S. at 448. Leal argues that the district court failed to adequately analyze whether Leal proximately caused Andy's losses. As a threshold matter, the government counters that Leal's appeal is barred by his appeal waiver.

"The right to appeal a conviction and sentence is a statutory right, not a constitutional one, and a defendant may waive it as part of a plea agreement." *United States v. Baymon*, 312 F.3d 725, 727 (5th Cir. 2002). "This court reviews de novo whether an appeal waiver bars an appeal." *United States v. Keele*, 755 F.3d 752, 754 (5th Cir. 2014). We generally enforce a waiver that "was knowing and voluntary, and if the waiver applies to the circumstances at hand." *United*

4

No. 16-11330

*States v. Walters*, 732 F.3d 489, 491 (5th Cir. 2013) (citing *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005)). Here, Leal does not dispute, and the record indicates, that the waiver was knowing and voluntary.

We determine the scope of an appeal waiver by examining "the plain language of the plea agreement," "employ[ing] ordinary principles of contract interpretation" and "construing waivers narrowly and against the Government." *Keele*, 755 F.3d at 754 (citations omitted); *cf. Puckett v. United States*, 556 U.S. 129, 137 (2009) ("Although the analogy may not hold in all respects, plea bargains are essentially contracts."). An appeal waiver, even if applicable, does not deprive this court of jurisdiction. *United States v. Story*, 439 F.3d 226, 230 (5th Cir. 2006).

Leal's "*Paroline*-based appeal of the district court's restitution order" is, according to our precedent, an "appeal of a sentence exceeding the statutory maximum punishment." *United States v. Winchel*, 896 F.3d 387, 389 (5th Cir. 2018); *see also United States v. Chem. & Metal Indus., Inc.*, 677 F.3d 750, 752 (5th Cir. 2012) (*CMI*). In *Winchel*, we held that a defendant could bring a *Paroline* challenge to a restitution order where the defendant's appeal waiver expressly reserved the right to appeal a sentence "exceeding the statutory maximum punishment." 896 F.3d at 389–90. Leal's appeal differs from Winchel's in that Leal did not expressly reserve the right to raise a statutory maximum challenge. But that difference is of no moment because as we explained in *Keele*, "an 'in excess of the statutory maximum' challenge, if properly raised on appeal, would not be barred by an appeal waiver." 755 F.3d at 756 (citing *CMI*, 677 F.3d at 752).

*Keele* did not delve into justifications for its rule, but our reasoning in *United States v. White*, 258 F.3d 374, 380 (5th Cir. 2001), is instructive and apposite. *White* is one in a series of our decisions affirming that "even if there

No. 16-11330

is an unconditional plea of guilty or a waiver of appeal provision in a plea agreement, this Court has the power to review if the factual basis for the plea fails to establish an element of the offense which the defendant pled guilty to." *Baymon*, 312 F.3d at 727 (listing cases). White pleaded guilty to violating 18 U.S.C. § 922(g)(9) by possessing a firearm after having been previously convicted of a "misdemeanor crime of domestic violence." 258 F.3d at 376. On appeal, White asserted that neither of the two predicate offenses listed in the indictment was a misdemeanor crime of domestic violence, whereas the government argued that White's appeal was foreclosed by his appeal waiver. The court sided with White.

*White* first questioned whether a defendant could ever "waive his substantive right 'to be free of prosecution under an indictment that fails to charge an offense.'" *Id.* at 380 (quoting *United States v. Meacham*, 626 F.2d 503, 509–10 (5th Cir. 1980)). As in *White*, the government does not identify, nor have we located, published authority suggesting that a defendant may waive the substantive right to be free of a sentence that exceeds the statutory maximum. As other circuits have noted, "[e]ven when a defendant, prosecutor, and court agree on a sentence, the court cannot give the sentence effect if it is not authorized by law." *United States v. Gibson*, 356 F.3d 761, 766 (7th Cir. 2004) (quoting *United States v. Greatwalker*, 285 F.3d 727, 730 (8th Cir. 2002)).

Ultimately, without resolving waivability, *White* "conclude[d] that the language of White's conditional plea agreement fails to embrace such a jurisdictional defect and, in any event, is insufficient to accomplish an intelligent waiver of the right not to be prosecuted (and imprisoned) for conduct that does not violate the law." 258 F.3d at 380. In other words, considering the essential nature of the substantive right on the one hand, and the generic phrasing of White's appeal waiver on the other hand, the court found that (1)

6

the right was not encompassed by the waiver (a matter of contract interpretation) and (2) the right could have not been knowingly and voluntarily surrendered (a problem of contract formation).

*White*'s contract-interpretation and contract-formation concerns apply with considerable force to the right to be free of a sentence exceeding the statutory maximum—particularly so in Leal's case because his plea agreement stated that any sentence imposed would be "solely in the discretion of the Court," "*so long as it is within the statutory maximum*" (emphasis added). That qualification reflects "that both parties to the plea agreement[] contemplated that all promises made were legal, and that the non-contracting 'party' who implements the agreement (the district judge) will act legally in executing the agreement." *United States v. Ready*, 82 F.3d 551, 559 (2d Cir. 1996). But a district court imposes a sentence expressly foreclosed by statute when it orders restitution under § 2259 for losses not proximately caused by the defendant. *See Winchel*, 896 F.3d at 389; *see also CMI*, 677 F.3d at 752 (restitution order under 18 U.S.C. § 3664 "that exceeds the victim's actual losses or damages is an illegal sentence").

The government did not address the *Keele* rule in its brief (though the government did cite *Keele* for other propositions). Faithfully applying *Keele*, which is in accord with at least seven other circuits, we find that Leal's statutory maximum challenge is not barred by his waiver of appeal. *See United States v. Guillen*, 561 F.3d 527, 530–31 (D.C. Cir. 2009); *United States v. Bibler*, 495 F.3d 621, 623–24 (9th Cir. 2007); *United States v. Andis*, 333 F.3d 886, 891–92 (8th Cir. 2003) (en banc); *United States v. Black*, 201 F.3d 1296, 1301 (10th Cir. 2000); *Ready*, 82 F.3d at 558–60; *United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992). This broad circuit agreement was recently acknowledged by the Supreme Court in *Garza v. Idaho*, 139 S. Ct. 738 (2019).

No. 16-11330

The Court explained that "no appeal waiver serves as an absolute bar to all appellate claims," and "all jurisdictions appear to treat at least some claims as unwaiveable," including, in some jurisdictions, "claims that a sentence . . . exceeds the statutory maximum authorized." *Id.* at 745 & n.6.

### III.

We review the district court's restitution order for plain error under Rule 52(b) because Leal did not object below. On plain error review, a court has discretion to correct an error only if it (1) was not intentionally relinquished or abandoned, (2) was plain, i.e. not subject to reasonable dispute, and (3) the error affected the defendant's substantial rights. *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (citing *United States v. Olano*, 507 U.S. 725 (1993)). Where those three conditions are met, and the error also "seriously affects the fairness, integrity or public reputation of judicial proceedings," then "the court of appeals should exercise its discretion to correct the forfeited error." *Id.* (quoting *Olano*, 507 U.S. at 736).

Leal contends that the district court plainly erred because the restitution request adopted by the district court "contained no true *Paroline* analysis." Specifically, Leal argues that (1) the $25,000 figure for general losses was "based on a portion of the minimum civil remedy set forth in 18 U.S.C. § 2255, which is not a factor listed in *Paroline*," and (2) "the $33,415 figure for expenses was not subjected to any proximate cause analysis or apportionment at all."

### A.

We first address Leal's challenge to his $25,000 assessment for Andy's general losses. "In determining the amount of general losses a defendant must pay under § 2259 the ultimate question is how much of these losses were the 'proximate result' of that individual's offense." *Paroline*, 572 U.S. at 449 (quoting 18 U.S.C. § 2259(b)(3)(F)). But the proximate cause analysis may be

"difficult" when, as is the case for Leal, the defendant is "one of thousands who have possessed and will in the future possess the victim's images but who has no other connection to the victim." *Id.* at 449. Such a defendant makes "very minor" "contribution[s] to the causal process underlying the victim's losses," compared to "the combined acts of all other relevant offenders" as well as the acts of distributors and producers. *Id.* at 454.

*Paroline* directed the sentencing court to "assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses." *Id.* at 459. Proper restitution "would not be severe" because the victim's general losses would be "the product of the acts of thousands of offenders. It would not, however, be a token or nominal amount." *Id.* at 458–59. *Paroline* listed various factors, "rough guideposts," relevant to a restitution calculation, but found it "neither necessary nor appropriate to prescribe a precise algorithm" or to make the specific *Paroline* factors mandatory on district courts. *Id.* at 459–60. Ultimately, a restitution order "cannot be a precise mathematical inquiry and involves the use of discretion and sound judgment." *Id.* at 459.

Under *Paroline*'s broad guidelines, Leal cannot show plain error with respect to the $25,000 assessed for Andy's general losses. Leal recognizes that the district court adopted the reasoning set forth in Andy's extensive restitution request and submission, which was attached to the PSR addendum. Leal does not challenge Andy's $2.1 million estimate of general losses and argues only that the $25,000 figure was derived without considering proximate cause. It is true that much of Andy's restitution request focused on the "reasonableness" of a $25,000 assessment in light of 18 U.S.C. § 2255, which entitles child pornography victims to liquidated damages of $150,000 when they prevail in civil suits. That reasonableness argument appears to have little

No. 16-11330

bearing on the relative significance of Leal's conduct in causing Andy's losses. But Andy's submission did discuss some of the *Paroline* factors. It represented that "Andy has received restitution in only a tiny number of cases in which he has been named a victim, in large part due to the fact that it was too late in the criminal process to ask for restitution by the time Andy retained our services." It also explained that Andy did not have information about whether future offenders contributing to Andy's general losses might be caught and convicted, nor did Andy have an estimate of the number of offenders involved with his images. Based on this evidence, holding Leal responsible for roughly one percent of Andy's general losses does not make Leal "liable for an amount drastically out of proportion to his own individual causal relation to the victim's losses." *Paroline*, 572 U.S. at 461. *Cf. United States v. Dunn*, 777 F.3d 1171, 1181 (10th Cir. 2015) (vacating restitution order that held a single defendant liable for $583,955 of the victim's $1.3 million general losses).

### B.

As to the assessment for expert expenses, we do not perceive plain error that seriously affects the fairness, integrity, or public reputation of judicial proceedings.

The district court imposed on Leal the full extent of Andy's expert expenses. Andy argued that he was entitled to recover those costs in full because Leal's "conviction was both a 'necessary' and 'sufficient' condition to produce all the [expert] costs." Put another way, Leal's offense caused the need for Andy's restitution request, and expert reports were required to support that request. However, Andy also forthrightly acknowledged that he "is submitting [the] . . . reports in other criminal cases in support of restitution, and with request for full restitution in these other cases." In these narrow circumstances, the government ideally should have presented evidence about

10

these other defendants. *See* 18 U.S.C. § 3664 ("The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government."); 18 U.S.C. § 2259(c)(2) (defining "full amount of the victim's losses" to "include[] *any costs* incurred, or that are reasonably projected to be incurred in the future, by the victim, as a *proximate result* of the offenses involving the victim") (emphasis added). For example, the government could have determined "the number of past criminal defendants found to have contributed to" Andy's expert expenses, either on its own or by asking Andy's attorneys. *See Paroline*, 572 U.S. at 460. Such developments would have given the district court an opportunity to apportion Andy's expert expenses between multiple defendants.

However, we agree with Andy and the government that if Leal had been the only defendant convicted in connection with Andy's images, then all the expert expenses could have been properly assessed against him. In the absence of any indication that Andy has received duplicative recovery on his expert expenses, we decline to find that ordering Leal to pay Andy's expert expenses in full seriously affected the fairness or integrity of these proceedings.

## IV.

For the foregoing reasons, the district court's judgment is AFFIRMED.