# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 10, 2023

Lyle W. Cayce
Clerk

_____

No. 22-10227

_____

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

EMMANUEL ALEXANDER TEIJEIRO,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 1:19-CR-121-1

_____

Before DUNCAN and WILSON, *Circuit Judges*, and MAZZANT, *District Judge*.[*]

STUART KYLE DUNCAN, *Circuit Judge*:

Emmanuel Teijeiro pled guilty of possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) & (b)(2). The district court sentenced him to 168 months in prison and ordered him to pay his victims $46,000 in restitution. On appeal, Teijeiro challenges whether he was competent to

_____

[*] United States District Judge for the Eastern District of Texas, sitting by designation.

No. 22-10227

enter into the plea agreement and whether the record supported the restitution order. Because neither challenge has merit, we AFFIRM.

I.

In 2019, the Abilene Police Department followed a CyberTip regarding possible child pornography associated with Teijeiro's roommate, Aeriel Jaggard. Officers interviewed Teijeiro, Jaggard, and a third roommate, all of whom admitted to watching child pornography regularly. Teijeiro in particular admitted to viewing child pornography habitually since 2014 and confessed, among other things, his attraction to children as young as "babies." Oddly, though, Teijeiro claimed that he intentionally caused his own arrest so he could report his suspicions about predatory activity by his own father.

Teijeiro agreed to a polygraph, during which he stated that he masturbated weekly to child pornography and described the types of videos he had recently viewed. He also admitted to engaging in sexual contact with children several times. Upon examining Teijeiro's cell phone, authorities discovered over 2,000 images depicting child sexual abuse and child pornography, which included children as young as toddlers and babies.

Teijeiro was arrested after a federal grand jury indicted him on one count of possessing material containing an image of prepubescent child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) & (b)(2). Teijeiro pled guilty and entered into a plea agreement under which he waived his right to "appeal the conviction, sentence, fine and order of restitution or forfeiture in an amount to be determined by the district court." As relevant here, the waiver contained certain exceptions, including reserving Teijeiro's "right . . . to bring a direct appeal of . . . a sentence exceeding the statutory maximum" and his right "to challenge the voluntariness of [his] plea of guilty or th[e] waiver." However, the agreement confirmed that it was "freely and

voluntarily made and [was] not the result of threats, or of promises apart from those set forth in this plea agreement."

At arraignment, the magistrate judge explained he was going to ask Teijeiro questions to "ensure that [he was] thinking clearly and fully underst[oo]d what [he was] doing, because pleading guilty to this charge [was] obviously a very serious matter." Teijeiro confirmed that he was not currently receiving (nor had received for the past year) medical care for any reason, including mental health; that he was not on medication; and that nothing interfered with his ability to think clearly and understand his guilty plea. Counsel on each side acknowledged they had no reason to doubt Teijeiro's competence, and the magistrate judge found him "competent to understand these proceedings and to enter a knowing and voluntary plea." Additionally, the magistrate judge asked Teijeiro if he understood that being convicted of this charge could possibly deprive him of certain valuable civil rights; that he would be put on the sex-offender registry; and that the conviction would likely substantially restrict where he could live, work, and with whom he could associate. Teijeiro responded, "[y]es, understood" to these questions.

Following this colloquy, the magistrate judge confirmed that Teijeiro still believed it was in his best interest to plead guilty and that Teijeiro had discussed the plea with his attorney. Accordingly, the magistrate judge found that Teijeiro was "fully competent and capable of entering an informed plea," and that the plea was knowing and voluntary. The district court accepted the magistrate judge's recommendation without objection.

When compiling the presentence report ("PSR"), a probation officer interviewed Teijeiro over the phone. Teijeiro admitted "he [was] guilty of this offense," but also made some erratic statements. For example, he reiterated that he "confess[ed] to the possession of illegal research materials

No. 22-10227

for the purpose of reporting a sex offender to a federal judge," in part to "unfreeze [his bank] account," which allegedly held funds for writing the pilot of the television show "Family Guy." Teijeiro also claimed he had "cured" himself in the early 2000s of schizophrenia, bipolar disorder, depression, panic attacks, and anxiety. While Teijeiro admits these statements were not verified by medical records or interviews, he points to his receipt of social security disability income due to mental illness, and a 2007 statement his mother made to police regarding his bipolar disorder.

The PSR also explained that both the Mandatory Victim Restitution Act of 1996 and the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 applied. The court was therefore required to calculate the "full amount of the victim's losses and . . . order restitution in an amount that reflect[ed] [Teijeiro's] relative role in the causal process . . . but which [was] no less than $3,000." *See* 18 U.S.C. § 2259(b)(2). The PSR and its addendum contained detailed information from professionals regarding the victims' economic losses and future treatment expenses, as well as victim impact statements. The addendum recommended that the district court order restitution to the eleven victims in amounts ranging from $3,000 to $10,000 each, totaling $46,000.

Teijeiro did not object to any of the PSR's factual findings and acknowledged that the calculated guideline range of 135 to 168 months was accurate. Before sentencing, Teijeiro submitted a memorandum asking for a within-guidelines sentence of 135 months. The memo declared that Teijeiro "suffer[ed] from mental health issues, which ha[d] classified him as disabled by the Social Security Administration," and which were either caused or exacerbated by the physical, emotional, and sexual abuse he suffered as a child. It also stated that "Mr. Teijeiro has taken responsibility for his conduct[,] . . . [and] he is remorseful and realizes the behavior was not just illegal but wrong ethically and morally."

No. 22-10227

At the sentencing hearing, Teijeiro again stated that he felt obligated to view child pornography to get another offender off the streets, and so he "manufactured a charge" against himself. The court asked counsel for Teijeiro and the government whether they knew of "any reason" the court could not lawfully impose a sentence; both attorneys said they did not. Teijeiro was sentenced to 168 months in prison. Adopting the PSR's factual findings and legal conclusions, the court also ordered Teijeiro to pay $46,000 in restitution.

Teijeiro timely appealed, but the attorney appointed to represent him moved to withdraw, arguing the appeal was frivolous. Teijeiro filed a *pro se* response in which he again made irrational assertions—such as that he manufactured the charge and that he spoke to President Obama about his money earned from writing the television pilot. We denied the motion to withdraw as inadequate, and Teijeiro's appointed attorney filed an appellate brief.

## II.

Teijeiro raises three arguments on appeal. First, he argues his plea was not knowing and voluntary because he was incompetent. Second, he argues the district court erred by failing to order a competency evaluation *sua sponte*. Third, he argues the restitution order was not supported by adequate findings. We consider each in turn.

## A.

First, competency to plead guilty. The government argues we should review this issue for plain error because Teijeiro neither challenged the knowing and voluntary nature of his plea in the district court nor sought to withdraw his guilty plea. Teijeiro argues for review under a clearly erroneous standard, because competency is a mixed question of law and fact. We need

5

No. 22-10227

not decide which standard is appropriate, because Teijeiro would fail under either one.

At Teijeiro's rearraignment hearing, the district court had no reason to believe his plea was not knowing or voluntary. Teijeiro essentially concedes as much in his brief: "It was during the PSR interview[] that [Teijeiro] first started exhibiting potential competency issues." Elsewhere, the brief admits that "the evidence of potential incompetency did not come to the [d]istrict [c]ourt's attention until after the guilty plea hearing." These concessions are supported by the record. For example, during rearraignment, Teijeiro confirmed to the magistrate judge that he understood the consequences of his plea, that he had reviewed the agreement with his counsel, and that he was pleading guilty because he was "in fact, guilty, and for no other reason."

Teijeiro now argues that, given the irrational statements in the PSR, one of the attorneys should have moved for a competency evaluation before sentencing. This argument is meritless. Teijeiro cites no authority for the proposition that erratic statements in a PSR can somehow retroactively undermine the defendant's competency to plead guilty. To the contrary, the plain language of the plea agreement and Teijeiro's testimony have a "strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *United States v. McDaniels*, 907 F.3d 366, 371 (5th Cir. 2018). Teijeiro has failed to overcome that presumption.

Accordingly, the district court did not err in adopting the magistrate judge's finding that Teijeiro was competent to plead guilty.

B.

Teijeiro next argues that the district court should have ordered a competency hearing *sua sponte*, given his statements to the probation officer during the PSR interview and during the sentencing hearing.

6

No. 22-10227

We have sometimes reviewed this kind of claimed error for abuse of discretion. *See United States v. Messervey*, 317 F.3d 457, 463 (5th Cir. 2002); *United States v. Davis*, 61 F.3d 291, 303 (5th Cir. 1995). We have reviewed for plain error, however, when a defendant has failed to make a competency objection during the guilty plea hearing and does not seek to withdraw his guilty plea. *See United States v. Montoya*, 838 F. App'x 898, 898 (5th Cir. 2021) (per curiam); *United States v. Villarreal*, 405 F. App'x 833, 833 (5th Cir. 2010) (per curiam). Because Teijeiro loses under either standard, "we decline to decide whether the stricter plain error standard of review is applicable." *United States v. Rey*, No. 21-40836, 2022 WL 6316459, at *1 (5th Cir. Oct. 7, 2022).

Convicting a legally incompetent defendant offends due process. *See Pate v. Robinson*, 383 U.S. 375, 378 (1966). "A defendant therefore has a procedural due process right to a competency hearing if the evidence before the district court 'raises a bona fide doubt as to [the] defendant's competence to stand trial.'" *United States v. Barajas*, No. 20-10582, 2021 WL 3437979, at *1 (5th Cir. Aug. 5, 2021) (quoting *Pate*, 383 U.S. at 385) (alteration in original)). "A defendant is competent to stand trial if he has the present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceeding[] against him." *United States v. Joseph*, 333 F.3d 587, 589 (5th Cir. 2003) (internal quotation marks and citation omitted) (alteration in original).

To order a competency hearing, a district court must have "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). But the existence of "mental or emotional problems or mental illness 'is not dispositive as to . . . competency.'" *Barajas*, 2021 WL 3437979,

at *4 (quoting *United States v. Mitchell*, 709 F.3d 436, 440 (5th Cir. 2013)). Instead, we consider three factors to detect whether a court reversibly erred by failing to hold a competency hearing *sua sponte*: (1) any prior medical opinion on competency, (2) the defendant's demeanor at trial, and (3) any history of irrational behavior. *See United States v. Messervey*, 317 F.3d 457, 463 (5th Cir. 2002). Here, no factor supports Teijeiro's argument.

The first factor weighs strongly against Teijeiro. While pointing to the irrational statements he made during his arrest, arraignment, and sentencing, he nonetheless concedes that "[t]here are no prior medical opinions about [his] competency in the record." *See Barajas*, 2021 WL 343979, at *4. Moreover, receiving Social Security disability benefits is not tantamount to a medical declaration of incompetency. *See ibid*.

The second factor, Teijeiro's demeanor in court, also cuts against him. He acted cordially, took responsibility for his actions, apologized for his criminal behavior, and stated he understood the purpose of the hearings. Teijeiro counters by pointing to his off-key contention at sentencing—namely, that he manufactured the charge in order to draw attention to his father. This argument is unavailing. In *Mitchell*, we found no error in not *sua sponte* ordering a competency hearing because, "[d]espite [the defendant's] illogical and rambling statements," his testimony "illustrated his basic awareness and understanding of the proceedings." 709 F.3d at 441. So too here.

Finally, the third factor, Teijeiro's irrational behavior, also fails to support him. Yes, Teijeiro made some strange statements about arranging his own arrest and writing a television pilot. But these assertions were not so irrational to show that the district court abused its discretion by not *sua sponte* addressing Teijeiro's competency. As discussed, despite his odd assertions,

No. 22-10227

Teijeiro consistently admitted his guilt, affirmed he understood the proceedings, and asked for a "fair" punishment.

In sum, we see no reversible error in the district court's not holding a *sua sponte* competency hearing prior to sentencing Teijeiro.

## C.

Lastly, Teijeiro contends the district court erred by ordering restitution without first determining his relative role in causing the victims' claimed losses.

As a threshold matter, the government argues we should not reach this argument because Teijeiro waived his right to appeal the "order of restitution . . . in an amount to be determined by the district court."[1] Teijeiro counters that, because the district court neglected to analyze how his offense proximately caused the victims' losses under *Paroline v. United States*, 572 U.S. 434, 448 (2014), his appeal falls under the waiver's exception for a "sentence exceeding the statutory maximum." We review *de novo* whether an appeal waiver bars an appeal. *United States v. Keele*, 755 F.3d 752, 754 (5th Cir. 2014).

The government asserts that Teijeiro's argument is foreclosed by *United States v. Meredith*, 52 F.4th 984 (5th Cir. 2022). *Meredith* concluded that "the statutory-maximum carveout authorizes an appeal *only* when the district court exceeds 'the upper limit of punishment that Congress has legislatively specified for violations of a statute'—*not* when the sentencing

---

[1] The government also argues Teijeiro forfeited this argument by failing to adequately brief it. We disagree. Teijeiro's briefing—which includes the standard of review, discusses applicable law, and explains how he believes the district court erred—is sparse but enough to preserve his argument. *See SEC v. Hallam*, 42 F.4th 316, 327 (5th Cir. 2022) ("To be adequate, a brief must 'address the district court's analysis and explain how it erred.'" (quoting *Rollins v. Home Depot*, 8 F.4th 393, 397 n.1 (5th Cir. 2021))).

judge commits any error under the sentencing statute." *Id.* at 987 (quoting *United States v. Bond*, 414 F.3d 542, 546 (5th Cir. 2005)). *Meredith*, however, addressed 18 U.S.C. § 3663, the general restitution statute authorizing "restitution in any criminal case to the extent agreed to by the parties in a plea agreement." *Id.* at 987 & n.1 (citation omitted).

Teijeiro's restitution was ordered under a different statute, 18 U.S.C. § 2259. We addressed that statute in *United States v. Winchel*, holding that "if a court orders a defendant to pay restitution under § 2259 without determining that the defendant's conduct proximately caused the victim's claimed losses, the amount of restitution necessarily exceeds the statutory maximum." 896 F.3d 387, 389 (5th Cir. 2018). The government does not meaningfully try to distinguish *Winchel*.

After briefing concluded in this case, we decided *United States v. Alfred*, 60 F.4th 979 (5th Cir. 2023). That case distinguished *Winchel* on the ground that, there, the district court performed the *Paroline* analysis and the appeal merely challenged its outcome. *See Alfred*, 60 F.4th at 982 ("Because it is clear that the district court considered the *Paroline* factors at sentencing and ordered restitution as authorized by § 2259, the statutory-maximum exception does not apply."). That is not the case here: the district court did not address *Paroline*. *Winchel* therefore controls and we proceed to the merits. *See United States v. Leal*, 933 F.3d 426, 430 (5th Cir. 2019) (finding appeal waiver did not bar a *Paroline*-based appeal even without an exception for sentences exceeding the statutory maximum).

On the merits, we review for plain error because Teijeiro did not object to the restitution order. *Puckett v. United States*, 556 U.S. 129, 135 (2009). As such, we have discretion to correct an error only if it "(1) was not intentionally relinquished or abandoned, (2) was plain, i.e. not subject to reasonable dispute, and (3) the error affected the defendant's substantial

No. 22-10227

rights." *Leal*, 933 F.3d at 431. Even so, we will reverse only if "the error also 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* at 431–32 (quoting *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016)).

Section 2259 provides that "a court [can] order restitution, but only to the extent it is shown that the defendant in question proximately caused the victim's losses." *Winchel*,  896 F.3d at 389. In *Paroline*, the Supreme Court enumerated certain factors as "rough guideposts" for this inquiry:

> [1] the number of past criminal defendants found to have contributed to the victim's general losses;
>
> [2] reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses;
>
> [3] any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted);
>
> [4] whether the defendant reproduced or distributed images of the victim;
>
> [5] whether the defendant had any connection to the initial production of the images;
>
> [6] how many images of the victim the defendant possessed;
>
> [7] and other facts relevant to the defendant's relative causal role.

572 U.S. at 460 (brackets added). The factors, however, "need not be converted into a rigid formula," *ibid.*, and we have since directed district courts to use discretion and sound judgment in applying them. *Leal*, 933 F.3d at 432. Moreover, the Supreme Court acknowledged that the analysis may be "difficult" when, as is the case here, the defendant is "one of thousands who

No. 22-10227

have possessed and will in the future possess the victim's images but who has no other connection to the victim." *Paroline*, 572 U.S. at 449.

We find helpful guidance in our recent opinion in *United States v. Musgraves*, No. 21-10947, 2022 WL 7283887 (5th Cir. Oct. 12, 2022), which addressed an analogous situation.[2] *Musgraves* affirmed a restitution award where the district court relied on detailed victim impact statements. *Id.* at *1. The district court ordered restitution in the amounts the victims requested, which represented only a small percentage of each of the victim's demonstrated total losses. *Ibid.* Further, there was no indication that any of the victims received duplicative recovery. *Ibid.*

That is exactly the case here. The district court adopted the PSR, which included the estimated total loss of each victim and an addendum with victim impact statements demonstrating how offenders like Teijeiro have perpetuated the victims' abuse. The restitution amounts ordered comply with the victims' requested amounts and represent only a small percentage of the demonstrated losses.[3] Moreover, there is no indication of duplicative recovery.[4]

---

[2] "An unpublished opinion issued after January 1, 1996 is not controlling precedent, but may be persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) (citing 5TH CIR. R. 47.5.4).

[3] For example, the largest individual amount, $10,000 for Sierra from the Jan_Sock1 Series, represents less than one percent of her estimated total losses.

[4] Accordingly, this case is distinguishable from a case like *Winchel*. There, we vacated a restitution award where the government conceded the first three plain error prongs and the district court had ordered an extraordinarily large restitution amount. *See Winchel*, 896 F.3d at 389 (explaining that "[w]hen a court orders a defendant to pay nearly $1.5 million in restitution without determining whether that amount complies with a basic statutory requirement—in this case, § 2259's proximate causation requirement—the fairness, integrity, and public reputation of judicial proceedings are seriously undermined").

No. 22-10227

Accordingly, Teijeiro "fails to show that there is a reasonable probability that such error resulted in his accountability for damages he did not cause or that the district court would have imposed a lower restitution amount but for any error." *Musgraves*, 2022 WL 7283887, at *1.

\* \* \*

AFFIRMED.