# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 21, 2023

Lyle W. Cayce
Clerk

———————

No. 22-40516

———————

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

REID ETHERIDGE,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:20-CR-1791-1

———————————————————————

Before WIENER, GRAVES, and DOUGLAS, *Circuit Judges*.

PER CURIAM:[*]

Defendant-Appellant Reid Etheridge pleaded guilty to crimes related to child pornography and the sexual abuse of young children. He was sentenced to life imprisonment and ordered to pay restitution, decisions which he now appeals. We affirm the sentence imposed by the district court but reverse and remand on the restitution award for reconsideration.

———————————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 22-40516

## FACTS AND PROCEEDINGS

Etheridge and his co-defendant, Alicia Cronkhite, were charged with crimes related to the sexual abuse of their own children. At the time, Etheridge's daughter ("E.E.") was four years old and Cronkhite's daughter ("K.C.") was six years old. Law enforcement uncovered pornographic images and videos of both children in Etheridge's possession. Etheridge and Cronkhite gave voluntary post-arrest statements admitting, among other things, that they produced and exchanged those files with each other while they were dating.

Etheridge pleaded guilty to two counts of production of child pornography, in violation of 18 U.S.C. § 2251(a), and one count of coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b). The plea agreement contained no appellate waiver.

### A. Sentencing

Defendants retained clinical psychologist Stephen Thorne to conduct psychosexual evaluations before sentencing. Thorne's report focused on two forms of assessments of recidivism: the "Risk for Sexual Violence Protocol" (RSVP) assessment and the "Static-99R" assessment. Thorne extensively interviewed Etheridge over video.

The RSVP consists of risk factors related to sexual violence history, psychological adjustment, mental disorder, social adjustment, and manageability. Thorne concluded in the RSVP that "Etheridge is a 'moderate' risk for future sexual recidivism." His opinion was "largely influenced by his alleged lack of additional (independent of the circumstances relating to the instant offenses) documented (via arrest or conviction) sexually deviant/violent behavior, his apparent history (for much of his adult life) of employment stability, a lack of documented (via arrest or conviction) non-sexually criminality and/or violent behavior, and

2

(since being arrested and detained in October 2020) his overall institutional adjustment." That said, Thorne also described "areas of concern" such as Etheridge's history of alcohol use, his childhood physical and sexual abuse by family, and the facts around the instant case—the filming and rape of familial and extrafamilial minors. Etheridge also admitted to sexual contact with a dog and his younger sister.

Etheridge's result on the Static-99R assessment was similar: He received a score of "+1," indicating an "average" risk of committing another sexual offense. The report makes clear that this score is "based on [sic] assumption that he would be released into the community prior to his 60th birthday; if he is released into the community on, or after, his 60th birthday, his overall Static-99R would be revised." Thorne opined that a "+1" overall Static-99R score indicates "a sexual recidivism rate approximately [three-quarters] of that of those offenders that have been described as the 'typical' offender (those offenders in the middle of the risk distribution)." Relevant literature indicates that, over a period of either five years or ten years, "less than 3% of [Texas] offenders with this same score were determined to have committed new sex offenses." "[F]irst-time sex offenders have been found to have significantly lower levels of sexual recidivism than do those with previous convictions for sex offenses," but sex offenders with prior sex-offense convictions have "nearly double the recidivism rates of first-time sexual offenders." The report also notes that appropriate therapy and treatment are likely to reduce recidivism.

Etheridge was sentenced on July 21, 2022. All parties agreed that the applicable guidelines range advised life imprisonment for Etheridge. Defense counsel implored the district court for a 18 U.S.C. § 3553(a) variance down to 20 to 30 years imprisonment based on evidence of Etheridge's childhood abuse, his history of stable employment, his status as a first-time offender, and the relatively lower rate of recidivism among first-

time sex offenders with treatment. Thorne was present at sentencing over video in case any question should arise.

During defendant's mitigation presentation, the district court noted that Thorne's conclusion regarding an "average chance of reoffending" was "disturbing," commenting that "[a]n average chance seems . . . more than a slight chance" and that it was "significant that [Etheridge's report] wasn't like Ms. Cronkhite's report," which designated her with a lower chance of recidivism. The court also observed that this case is not merely about child pornography: "most of these [statistics cited by the defense] . . . were child porn cases and talking about child porn, but this is, in [the court's] estimate, dramatically worse . . . This is . . . rap[e]." No specific objections were made by defense counsel regarding the court's observations of the Thorne assessment. At the close of argument, the court sentenced Etheridge to the guideline sentence of life, having "very closely" considered "all the [18 U.S.C. §] 3553(a) factors."

*B. Restitution*

Earlier in the case, the Government had sent victim impact forms to the guardians of K.C. and E.E. Those forms instruct victims to identify related harms and financial losses. Only E.E.'s guardian completed a form, stating that E.E. had received state-funded counseling. She also indicated that she had incurred no related expenses and anticipated no future sessions "for now." E.E.'s guardian disclosed that she did not know whether "E.E." remembered the assaults and did not know how the assaults would affect "E.E." in the future. That form was included as an addendum to the presentence report (PSR). The PSR merely noted under restitution that K.C. and E.E. were victims. The Government's submissions did not address a foundation for restitution either, beyond stating that any "future harm is immeasurable," and advised that it did "not believe, nor had any

evidence that the videos of the Minor Victims have been shared to the internet or other sexual predators."

At sentencing, the district court raised the subject of restitution during the victim allocutions by E.E. and K.C.'s guardians. The court lengthily explained that emotional trauma could manifest in victims for years and that such trauma could warrant "more intense therapy." Only then did K.C.'s guardian indicate that he had paid out-of-pocket for his daughter's visits to her psychologist, but he was reluctant to give an estimate of the amount. The court went on to describe the restitution process and indicated that an estimate of future expenses did not require mathematical precision. The court stated that Etheridge's available funds would not benefit any victims unless an estimate of loss is provided. It added that this was the guardians' "chance to help the victim here" despite their evident "reluctan[ce]." In response, K.C.'s guardian finally estimated that he had spent about $2,000 on mental health fees for K.C. Without further input from K.C.'s guardian, the court opined that future expenses might amount to $1,000 per year over the next five or six years. K.C.'s guardian simply agreed.

The court's discussion with E.E.'s guardian proceeded similarly, although she affirmed that she had incurred no costs by attending state-funded treatment to date. She noted that E.E. still lived in the house where she was molested and that she recalled some encounters. In response to the court's questioning about future manifestations of trauma, E.E.'s guardian stated that she had concerns for future therapy. The court concluded that E.E. would need similar care to K.C. and came up with a restitution amount accordingly.

For K.C., the court ordered $2,000 in restitution for past treatment and $10,000 for future treatment. For E.E., the court ordered $10,000 in

No. 22-40516

restitution for future treatment. The judgment reflects these restitution awards and Etheridge's sentence of life imprisonment. Etheridge timely appealed.

## STANDARD OF REVIEW

We review Etheridge's sentence for plain error because the instant issues were not preserved. Etheridge failed to challenge the district court's interpretation of the assessment with adequate specificity. *See United States v. Zarco-Beiza*, 24 F.4th 477, 481-82 (5th Cir. 2022) (holding that a defendant's general disagreement with the district court was insufficient to preserve his later specific claim of error on appeal). At sentencing, defense counsel merely communicated that a life sentence was greater than necessary without describing why the court was incorrect in its interpretation of the assessment. That said, the issue was not fully waived, as to prevent appellate review, in light of counsel's express disagreement with the sentence. *See United States v. Cabello*, 33 F.4th 281, 295 (5th Cir. 2022).

Because the restitution award was not challenged below, we review that issue for plain error. *See United States v. Leal*, 933 F.3d 426, 431-32 (5th Cir. 2019) (reviewing restitution award for child pornography offenses under 18 U.S.C. § 2259 for plain error). Thus, for both issues, Etheridge must demonstrate that the district court clearly and obviously erred, and that such error affected his substantial rights. *See id*. The error must "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Zarco-Beiza*, 24 F.4th at 482 (cleaned up).

No. 22-40516

## ANALYSIS

*A. Sentencing*

Etheridge asserts two substantive misinterpretations of Thorne's report by the district court at sentencing: (1) the district court misunderstood that an "average" designation for recidivism indicated a single-digit likelihood of reoffending; and (2) the court misunderstood that Thorne's conclusions were premised on Etheridge's release *before* the age of 60, which was unlikely even with the variance.

The record does not contain any statements reflecting *clear or obvious* error as to either of those contentions. Etheridge is left with mere speculation as to how the district court misinterpreted that evidence. *See United States v. Guzman-Reyes*, 853 F.3d 260, 266 (5th Cir. 2017) ("[S]peculative contention does not demonstrate reversible plain error."). Simply put, the report contained both good and bad, and any disagreements that the district court had with the report were explained without erroneous reasoning. For example, the district court expressly distinguished statistics cited by defense counsel as relating to child pornography only, but this case involved rampant sexual abuse. The district court also expressly noted its surprise that Etheridge had a merely "average" chance of recidivism and that it had considered the "very different" results of Etheridge's assessment from Cronkhite's report, which reflected a lower category of recidivism. The court reviewed the entire report and was within its discretion to weigh its contents accordingly. *See United States v. Cantu-Ramirez*, 669 F.3d 619, 628 (5th Cir. 2012) ("District courts enjoy wide discretion in determining which evidence to consider and to credit for sentencing purposes.").

Furthermore, the district court stated that it had closely considered all relevant statutory factors in deciding against varying downwards. *See* 18

No. 22-40516

U.S.C. § 3553(a). Although the court placed great weight on recidivism and public safety, mere disagreement with how these factors are weighed does not amount to plain error. *See United States v. Alvarado*, 691 F.3d 592, 597 (5th Cir. 2012) ("[A] sentencing judge 'must use their judgment to weigh the relative importance of each factor.'"). The record does not indicate any clear or obvious error in the district court's reading of the evidence in deciding against varying downwards. We affirm.

### B. Restitution

Restitution is proper here "only to the extent the defendant's offense proximately caused a victim's losses." *Paroline v. United States*, 572 U.S. 434, 448 (2014); *see, e.g.*, 18 U.S.C. § 2259(b)(2)(A) ("The court shall determine the full amount of the victim's losses that were incurred or are reasonably projected to be incurred by the victim as a result of the trafficking in child pornography depicting the victim."). The burden is on the Government to demonstrate the amount of the victim's losses that resulted from an offense. *Paroline*, 572 U.S. at 443. "Though it need not be exact, a district court's '[r]estitution order[] should represent an application of law, not a decisionmaker's caprice.'" *United States v. Villalobos*, 879 F.3d 169, 172 (5th Cir. 2018) (citing *Paroline*, 572 U.S. at 462). Erroneously excessive awards "cannot be excused [as] harmless error." *United States v. Sharma*, 703 F.3d 318, 322 (5th Cir. 2012).

Although great latitude is afforded to the sentencing court for estimating restitution, neither the victims nor the Government submitted any evidence of costs here. The PSR merely states that K.C. and E.E. were victims, with no indication of expenses that arose from the harms. The only victim impact form filed in this case expressly notes that no costs were incurred and that no further counseling sessions were yet anticipated. The

Government provided no further foundation or argument on restitution amount in its pre-sentence filings or at sentencing.

The Government now asserts, for the first time, that it had an undue difficulty in presenting such evidence. *See Villalobos*, 879 F.3d at 169. The fact that this was never mentioned below torpedoes this contention, but the record does not support it either. *Id.* The victims' guardians were present at sentencing. The assessment of past medical expenses is easy enough to muster through medical bills, and such bills could provide good bases for estimating future expenses. Alternatively, future expenses might be estimated through submissions by the Government regarding similar cases of restitution or relevant testimony. But *nothing* was submitted or referenced here.

The Government's conduct falls far short of its burden of providing the court with enough evidence to estimate the victim's losses with *some reasonable certainty*. *United States v. Reese*, 998 F.2d 1275, 1282-84 (5th Cir. 1993) (remanding the issue of restitution for further consideration because "[t]he testimony and evidence in the restitution hearing is inadequate to permit the appellate court to arrive at a correct determination of these amounts"). Therefore, we have no choice but to vacate the existing awards of restitution to K.C. and E.E.

That said, we agree with the district court that restitution is well-warranted. E.E.'s guardian submitted in her form that neither of them were "fully healed" from Etheridge's crimes and K.C.'s guardian stated at sentencing that costs for therapy were incurred. We therefore remand this case for the district court's reconsideration of the restitution amounts to K.C. and E.E. We also hold that the Government may present supplemental evidence on remand because of the great harm that the victims may suffer from

No. 22-40516

"the Government's failure to present sufficient evidence to the district court." *Villalobos*, 879 F.3d at 172.

## Conclusion

We VACATE the restitution order and REMAND the case to the district court for further proceedings consistent with this opinion. The sentence is otherwise AFFIRMED.