IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-40393

_____

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

        versus

ROBERT WHITE,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Texas

_____

July 13, 2001

Before GARWOOD, HALL,[1] and BARKSDALE, Circuit Judges.

GARWOOD, Circuit Judge:

        Defendant-Appellant Robert Alan White appeals his conviction,
pursuant to his guilty plea, of one count of violating 18 U.S.C. §
922(g)(9).  He asserts that the count of which he was convicted fails
to state an offense and that his motion to dismiss the superseding
indictment should have been granted.   We conclude the count of
conviction does not state an offense because neither of the predicate

_____

        [1]Circuit Judge of the Ninth Circuit, sitting by designation.

offenses alleged constitutes "a misdemeanor crime of domestic violence," under section 922(g)(9), in that neither "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon" as required by 18 U.S.C. § 921(a)(33)(A)(ii). We accordingly reverse and remand.

## Facts and Proceedings Below

White was charged in an August 3, 1999, nine count superseding indictment. Each count charged a violation of 18 U.S.C. § 922(g)(9)[2] based on White's possession on May 3, 1999, in Collin County, Texas, of a firearm, after having been convicted on August 1, 1994, of two specified offenses, each asserted to be "a misdemeanor crime of domestic violence" as defined in 18 U.S.C. § 921(a)(33)(A).[3] Each of the nine

---

[2]18 U.S.C. § 922(g)(9) provides:

"(g) It shall be unlawful for any person--
. . .
  (9) who has been convicted in any court of a misdemeanor
   crime of domestic violence,
to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

[3]18 U.S.C. § 921(a)(33)(A) provides:
"(a) As used in this chapter–
. . .
(33)(A) . . . the term 'misdemeanor crime of domestic violence' means an offense that–
        (i) is a misdemeanor under Federal or State law;
     and
        (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person

2

counts relies on the same two August 1, 1994, predicate convictions, which are alleged in paragraphs 1 and 2 of the indictment's "introduction," those paragraphs being incorporated by reference in each of the nine counts. And, each of the nine counts is otherwise identical except only that each alleges a different firearm. The indictment's two introductory paragraphs are as follows:

> "1. On or about August 1, 1994, the Defendant, ROBERT WHITE, was convicted of the offense of reckless conduct, in violation of Section 22.05, Texas Penal Code, in Cause No. 2-80456-94, in the County Court at Law Number 2, Collin County, Texas. Section 22.05(a), Texas Penal Code, as it existed on August 1, 1994, provided, in part: 'A person commits an offense if he recklessly engages in conduct that places another in imminent danger of serious bodily injury.' The information on which Defendant, ROBERT WHITE, was convicted, charged, in part, that the defendant '[D]id then and there recklessly engage in conduct that placed Shaun O'Neal White in imminent danger of serious bodily injury by then and there knowingly pointing a firearm at and in the direction of the said Shaun O'Neal White.' Defendant, ROBERT WHITE, was, at the time the offense was committed, the spouse of Shaun O'Neal White.
> 2. On or about August 1, 1994, the Defendant, ROBERT WHITE, was convicted of the offense of terroristic threat, in violation of Section 22.07, Texas Penal Code, in Cause No. 2-84294-93, in the County Court at Law Number 2, Collin County, Texas. Section 22.07, Texas Penal Code, as it existed on August 1, 1994, provided, in part: '(a) A person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to: . . . (2) place any person in fear of imminent serious bodily injury . . .' The information on which Defendant, ROBERT WHITE, was convicted, charged, in part, that the defendant '[D]id then and there intentionally and knowingly threaten to commit an offense involving violence to Valerie Martinico, namely, threatened to kill Valerie Martinico, with intent to place Valerie Martinico in fear of imminent serious bodily

---

who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent or guardian of the victim."

3

injury.' Defendant, ROBERT WHITE, was, at the time the offense was committed, the former spouse of Valerie Martinico."

Count 4 of the indictment—the count White was convicted of on his guilty plea, the other counts being dismissed pursuant to the plea agreement—reads as follows:

"The Grand Jury realleges paragraphs 1 and 2 of the Introduction.
On or about the 3rd day of May, 1999, in Collin County, Texas, in the Eastern District of Texas, ROBERT WHITE, Defendant herein, having been convicted of a misdemeanor crime of domestic violence, specifically, 1) Reckless conduct, in Cause No. 2-80456-94, in the County Court at Law Number 2, Collin County, Texas, on August 1, 1994, and 2) Terroristic threat, in Cause No. 2-84294-93, in the County Court at Law Number 2, Collin County, Texas, on August 1, 1994, did knowingly and unlawfully possess in and affecting commerce, and receive a firearm, specifically, a Remington semi-automatic shotgun, Model SP-10 Mag, 10 gauge, displaying serial number RMO33655, which had been shipped and transported in interstate commerce, in violation of Title 18, United States Code, Sections 922(g)(9) and 924(a)(2)."[4]

On October 20, 1999, White filed an extensive motion to dismiss the indictment, asserting: that the May 3, 1999, federal search of his Collin County home during which the nine firearms charged in the indictment were found was pursuant to an invalid warrant as the warrant was based on his deposition testimony which was compelled contrary to his Fifth Amendment rights; that "[t]he alleged prior convictions the government intends to use to prove its charges are not 'misdemeanor crimes of domestic violence' under section 921(a)(33)(A);" that his guilty plea, and waiver of jury trial, to the predicate offenses was not

_____

[4]As noted, the other eight counts are identical to count 4 except each of the other eight alleges a different firearm.

4

"knowing and intelligent" as required by 18 U.S.C. § 921(a)(33)(B); that section 922(g)(9) violated White's rights under the Second Amendment, the Due Process Clause of the Fifth Amendment and the Ninth Amendment; and that section 922(g)(9) violates the Tenth Amendment and exceeds Congress's power under the Commerce Clause.

On November 1, 1999, the district court held an evidentiary hearing on White's motion to dismiss. It denied the motion in a November 4, 1999, order, without stating reasons. On November 5, 1999, White and the government executed a plea agreement pursuant to which White agreed to plead guilty to count 4 and the government agreed to dismiss the remaining counts (and not to prosecute White for any statements made in connection with his acquisition of the firearm alleged in count 4). There was no agreement as to sentence. On the same day, and pursuant to the written consent of White and the government, the magistrate judge held a Fed.R.Crim.P. Rule 11 hearing and recommended that White's plea be accepted. The district court subsequently adopted the magistrate judge's report, and pursuant thereto accepted White's plea and found him guilty of count 4.

The evidence at the hearing on the motion to dismiss and at the Rule 11 hearing reflected the following. White was convicted on August 1, 1994, in the County Court at Law No. 2 of Collin County, Texas, of one offense of reckless conduct, in violation of Section 22.05(a) of the Texas Penal Code and of one offense of terroristic threat, in violation of Section 22.07(a)(2), Texas Penal Code. In each case the conviction

5

was by plea (of guilty to reckless conduct and of no contest to terroristic threat) to an information alleging that the offense was committed in Collin County. White was represented by counsel. The section 22.05(a) information alleged that on July 7, 1993, White did: "recklessly engage in conduct that placed Shaun O'Neal White in imminent danger of serious bodily injury by then and there knowingly pointing a firearm at and in the direction of the said Shaun O'Neal White." The section 22.07(a)(2) information alleged that on September 27, 1993, White did "intentionally and knowingly threaten to commit an offense involving violence to Valerie Martinico, namely, threatened to kill Valerie Martinico, with intent to place Valerie Martinico in fear of imminent serious bodily injury."

The Rule 11 and motion to dismiss evidence likewise showed that on July 7, 1993, White and Shaun O'Neal White (the victim named in the section 22.05(a) charge) were married to each other, and that White had married Valerie Martinico (the victim named in the section 22.07(a)(2) charge) in October 1989 and their marriage was annulled in March 1990. The evidence also showed that on September 14, 1998, White purchased the firearm alleged in count 4 from a licensed federal firearms dealer in Garland, Texas, executing an ATF form 4473, that this weapon was manufactured outside of the state of Texas, and that it (together with the firearms charged in the other counts) was found in White's home in Collin County, Texas, in the search thereof by Federal officers on May

6

3, 1999.[5]

White was sentenced to forty-one months' confinement, a $7,500 fine and three years' supervised release. He timely brings this appeal.[6]

## Discussion

White raises several contentions on appeal. We consider only the argument that neither of the two August 1, 1994, predicate convictions was a conviction of a "misdemeanor crime of domestic violence" under section 922(g)(9) (see note 2 above) because neither "has, as an element, the use or attempted use of physical force, or the threatened

---

[5]The evidence on the motion to dismiss reflects that the search came about in the following manner.

In February of 1999, White was married to Meghan White, but they were separated and she was in the process of divorcing him. Apparently in an attempt to obtain leverage against him in the impending battle for custody of the couple's son, Meghan contacted the Bureau of Alcohol, Tobacco and Firearms and informed BATF Special Agent Crossland that White had been convicted of misdemeanor crimes of domestic violence and was, therefore, unlawfully in possession of several firearms which he kept "in a gun safe at his residence." Crossland conducted a search of White's criminal history and found the two August 1, 1994, convictions alleged in the indictment (he does not mention any others). Crossland told Meghan that he needed fresher evidence before he could obtain a search warrant for White's residence. Meghan then informed Crossland that, in connection with the divorce, she would soon be deposing White. Crossland stated that if White were, in this deposition, to openly admit that he possessed firearms at his residence, Crossland would then have sufficient cause to obtain a search warrant. Not surprisingly, at the April 8, 1999, deposition, for which White had been subpoenaed, Meghan's attorney asked White (who was also represented by counsel) if he possessed firearms at his residence. Believing the question to relate to the safe storage of the weapons, White answered in the affirmative. As a result, Crossland was able to obtain a search warrant for White's residence on April 29, 1999, and it was executed on May 3, 1999. Government agents confiscated the nine firearms found there which are alleged in the nine counts of the indictment.

[6]The district court ultimately stayed execution of the sentence pending resolution of this appeal.

use of a deadly weapon" against the victim as required by section 921(a)(33)(A)(ii) (see note 3 above).

Because White first advanced this argument on appeal in his reply brief, we allowed the government to file a supplemental brief in response. In it, the government urges that White has waived this argument and that, in any event, the Texas predicate offenses of which White was convicted each constituted a misdemeanor crime of domestic violence. We first address the government's waiver arguments.

I.  Waiver

The government offers three bases for finding waiver: 1) White's failure to raise the argument in his initial appellate brief; 2) White's plea of guilty admitted that the predicate offenses were misdemeanor crimes of domestic violence; and 3) the provision of the plea agreement waiving the right to appeal.

The government's first two grounds for waiver have, in the context of a challenge to the sufficiency of an indictment, been consistently rejected by this Court. It is well settled that the "entry of a guilty plea does not act as a waiver of jurisdictional defects such as an indictment's failure to charge an offense" and that the defendant may raise such failure at *any* time. *United States v. Meacham*, 626 F.2d 503, 510 (5th Cir. 1980). *See also* FED.R.CRIM.P. 12(b)(2); *United States v. Berrios-Centeno*, 2001 WL 435494 (5th Cir. Apr. 27, 2001); *United States v. Cabrera-Teran*, 168 F.3d 141, 143 (5th Cir. 1999); *United States v. Marshall*, 910 F.2d 1241, 43 (5th Cir. 1990); *United States v. Morales-*

*Rosales*, 838 F.2d 1359, 1361-62 (5th Cir. 1988); *United States v. Edrington*, 726 F.2d 1029, 1031 (5th Cir. 1984). Moreover, we have held that, notwithstanding an unconditional plea of guilty, we will reverse on direct appeal where the factual basis for the plea as shown of record fails to establish an element of the offense of conviction. *See, e.g., United States v. Johnson*, 194 F.3d 657 (5th Cir. 1999), *vacated and remanded*, 120 S.Ct. 2193 (2000), *prior opinion reinstated with modification*, 246 F.3d 749 (5th Cir. 2001).

Turning to the third basis for waiver, the plea agreement contained the following provision:

> "With the exception of: (a) Sentencing Guidelines determinations, and (b) issues arising from the Court's denial of Defendant's Motion to Dismiss, Defendant waives any appeal, including collateral appeal under 28 U.S.C. § 2255, of any error which may occur surrounding substance, procedure, or form of the conviction and sentencing in this case."

The government accurately points out that White's motion to dismiss, in support of its contention that the predicate August 1, 1994, convictions were not for "misdemeanor crimes of domestic violence," argued only that they were not such because neither of the Texas statutes he was convicted of violating, Texas Penal Code sections 22.05(a) and 22.07(a)(2), made it an element of the offense that the victim had or had had any marital or other relationship to the defendant,[7] and that in any event Martinico was not within the relationship contemplated by

_____

[7]White also raises this contention on the present appeal. We do not reach it. Nor do we reach any other of White's contentions raised on this appeal and not addressed in this opinion.

9

section 921(a)(33)(A)(ii) because his marriage to her had been annulled years before commission of the predicate offense involving her. The government also correctly observes that similar plea agreement provisions are routinely held to deprive appellate courts of jurisdiction to hear appeals of sentencing issues. *See, e.g. United States v. Melancon*, 972 F.2d 566, 567 (5th Cir. 1992). The government cites no authority, and we are aware of none, that holds that a defendant can waive his substantive right "to be free of prosecution under an indictment that fails to charge an offense . . . ." *United States v. Meacham*, 626 F.2d 503, 509-10 (5th Cir. 1980). The considerations militating against waiver are particularly forceful where, as here, the claimed defect in the indictment is not merely a matter of its omission or misuse of wording but is rather that, as a matter of law, the indictment itself affirmatively reflects that the offense sought to be charged was not committed. Without deciding whether that character of defect is ever waivable in a civilized system of justice, we conclude that the language of White's conditional plea agreement fails to embrace such a jurisdictional defect and, in any event, is insufficient to accomplish an intelligent waiver of the right not to be prosecuted (and imprisoned) for conduct that does not violate the law. We also note in this connection that White preserved his pretrial motion to dismiss the indictment, and that motion contained an attack on the sufficiency of the indictment that is related to that we address herein. We reject the government's waiver argument, especially

10

since failure to do so risks depriving a person of his liberty for conduct that does not constitute an offense.

II. Merits

If, as here, the defendant raises a challenge to the indictment for the first time on appeal and does not assert procedural prejudice, such as lack of adequate notice of the crime alleged, we read the indictment with "maximum liberality" and will find it sufficient unless "it is so defective that by any reasonable construction, it fails to charge the offense for which the defendant is convicted." *United States v. Fitzgerald*, 89 F.3d 218, 221 (5th Cir. 1996) (footnote omitted); *see also United States v. Cabrera-Teran*, 168 F.3d 141, 143 (5th Cir. 1999).

"The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." FED.R.CRIM.P. 7(c)(1). "To be sufficient, an indictment must allege each material element of the offense; if it does not, it fails to charge that offense. This requirement stems directly from one of the central purposes of an indictment: to ensure that the grand jury finds probable cause that the defendant has committed each element of the offense, hence justifying a trial, as required by the Fifth Amendment." *Cabrera-Teran*, 168 F.3d at 143 (footnotes omitted). "The starting place for any determination of whether the charged conduct [is] proscribed by [a criminal] statute is a reading of the language of the charging instrument and the statute itself." *United States v. Morales-Rosales*, 838 F.2d 1359, 1361 (5th Cir. 1988).

11

White was convicted of violating section 922(g)(9) (see note 2, *supra*). That section, by its terms, can be violated only by one "who has been convicted in any court of a misdemeanor crime of domestic violence." Section 921(a)(33)(A) (see note 3 *supra*) defines "misdemeanor crime of domestic violence" so that no offense is included within that definition unless it, *inter alia*, "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon," against the victim. Count 4 of the indictment (like each of the other counts) incorporated by reference paragraphs 1 and 2 of the indictment's introduction, and clearly alleged that the predicate convictions were the two convictions of August 1, 1994, one for violation of Texas Penal Code section 22.05(a) and the other for violation of Texas Penal Code section 22.07(a)(2).

These sections of the Texas Penal Code as in effect August 1, 1994,[8] provided as follows:

> "**Sec. 22.05. Reckless Conduct**
> (a) A person commits an offense if he recklessly engages in conduct that places another in imminent danger of serious bodily injury.
> (b) Recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded.
> (c) An offense under this section is a Class B misdemeanor."

> "**Sec. 22.07. Terroristic Threat**
> (a) A person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to:

---

[8]Each section has been amended by Acts 1993, 73rd Leg., ch. 900, § 1.01, effective September 1, 1994.

12

(1) cause a reaction of any type to his threat by an official or volunteer agency organized to deal with emergencies;

(2) place any person in fear of imminent serious bodily injury; or

(3) prevent or interrupt the occupation or use of a building; room; place of assembly; place to which the public has access; place of employment or occupation; aircraft, automobile, or other form of conveyance; or other public place; or

(4) cause impairment or interruption of public communications, public transportation, public water, gas, or power supply or other public service.

(b) An offense under Subdivision (1) or (2) of Subsection (a) of this section is a Class B misdemeanor. An offense under Subdivision (3) of Subsection (a) of this section is a Class A misdemeanor. An offense under Subdivision (4) of Subsection (a) of this section is a felony of the third degree."[9]

The question then is whether either of these Texas offenses "has, as an element," either "the use or attempted use of physical force" or "the threatened use of a deadly weapon" against the victim. What the elements of these Texas offenses are is a question of law which we review de novo. *See, e.g., Salve Regina College v. Russell*, 111 S.Ct. 1217 (1991). The elements of the offense are determined by the statute defining it. *See United States v. Deisch*, 20 F.3d 139, 143 (5th Cir. 1994); Texas Penal Code § 1.03(a) ("Conduct does not constitute an

---

[9]We take judicial notice of Texas law. *See, e.g., Lamar v. Micou*, 114 U.S. 218, 5 S.Ct. 857, 859 (1885) ("The law of any state of the Union, whether depending upon statutes or upon judicial opinions, is a matter of which the courts of the United States are bound to take judicial notice, without plea or proof"); *Budget Rent-A-Car Corp. v. Fein*, 342 F.2d 509, 514 n.11 (5th Cir. 1965) ("federal courts take judicial knowledge of the laws, statutory and judicial, of all of the states. Neither pleading nor proof is required"); *J.M. Blythe Motor Lines Corp. v. Blalock*, 310 F.2d 77, 78 (5th Cir. 1962); *Gallup v. Caldwell*, 120 F.2d 90, 93 (3d Cir. 1941).

offense unless it is defined as an offense by statute, municipal ordinance, order of a county commissioners court, or rule authorized by and lawfully adopted under a statute").

We first consider section 22.05(a), which provides that one "commits an offense if he recklessly engages in conduct that places another in imminent danger of serious bodily injury." This offense does not require that the perpetrator actually "use" "physical force" against another (or use it at all).[10] Nor does section 22.05(a) require that there be any "attempted use of physical force." Attempt necessarily imports a specific intent.[11] However, specific intent is a more culpable

---

[10]Compare Texas Penal Code § 22.01(a):
"(a) A person commits an offense if the person:
    (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;
    (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or
    (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative."

[11]*See, e.g.,* Tex. Penal Code § 15.01(a) ("A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended"); *U.S. v. Thompson*, 130 F.3d 676, 688 (5th Cir. 1997). *See also* 21 Am. Jur. 2d *Criminal Law* § 176:

"Attempt is a specific intent crime. The act constituting the attempt must be done with the intent to commit that particular crime. It is the intent to commit the crime, not the possibility of success, which determines whether the defendant's act or omission constitutes the crime of attempt. Consequently, the defendant must act intentionally, and as neither negligence nor recklessness includes specific intent, as required for crime of attempt, there can be no attempt to accomplish an unintended result.

14

state of mind than recklessness,[12] which is all that section 22.05(a) requires. It is evident that neither "the use . . . of physical force" nor "the . . . attempted use of physical force" is an element of the section 22.05(a) offense.

Similarly, "the threatened use of a deadly weapon" against the victim is not an element of the section 22.05(a) offense. The provision of section 22.05(b) that "[r]ecklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm be loaded" does not make "threatened use of a deadly weapon" an element of the offense. To begin with, "this provision . . . is not a required element of . . . [the offense], [but] only a *permissive* means by which to trigger a presumption of recklessness." *Hirad v. State*, 14 S.W.3d 351, 352 n.1 (Tex. App.--Hou. [14th Dist.] 2000, p.d.r. ref'd). *See also Kingsbury*

---

. . . Implicit in the meaning of attempt is the will of the actor to accomplish the act attempted; there is no such thing as attempted negligence or attempted recklessness. To establish an attempt, the state must thus prove that the defendant acted with the culpability required."

*Id.* at 251 (footnotes omitted).

[12]See Tex. Penal Code § 6.02(d):

"(d) Culpable mental states are classified according to relative degrees, from highest to lowest, as follows:

(1) intentional;
(2) knowing;
(3) reckless;
(4) criminal negligence."

15

*v. State*, 14 S.W.3d 405, 409 (Tex. App. Waco, 2000) (section 22.05(a) has "no requirement that a deadly weapon was used").[13]  Moreover, "knowingly pointing a firearm at or in the direction of" an individual, as referenced in section 22.05(b), is not the same as having "*threatened* use of a deadly weapon" against that individual as provided in section 921(a)(33)(A).  This lack of equivalence is evident from the fact that Texas Penal Code §§ 22.01(a)(2) (see note 10 *supra)* and 22.07(a) each explicitly contain the element "threatens," but section 22.05 does not mention "threatens" (or "threat" or "threaten") or any synonym thereof.  A threat imports "[a] communicated intent to inflict physical or other harm" and is "distinguished from words uttered as mere . . . idle talk or jest."  Black's Law Dictionary (6th ed. 1990) at 1480.  *See also United States v. Howell*, 719 F.2d 1258, 1260 (5th Cir. 1983) (threat must be "a serious one, not uttered in jest, idle talk, or political argument"); 31A Am. Jur. 2d *Extortion, Blackmail, Threats* § 63 (threat must be communicated), § 67 ("idle talk or jests which do not have a reasonable tendency to create apprehension that the speaker will act according" thereto are not threats); *Brown v. State*, 154 S.W.2d 464, 465

---

[13]Under Texas Penal Code § 2.05(1) "if there is sufficient evidence of the facts that give rise to the [statutory] presumption" then "the existence of the presumed fact must be submitted to the jury, unless the court is satisfied that the evidence as a whole clearly precludes a finding beyond a reasonable doubt of the presumed fact."  If the presumed fact is submitted to the jury, it "shall" be instructed that if "the facts giving rise to the presumption" "are proven beyond a reasonable doubt the jury may find that the element of the offense sought to be presumed exists, but it is not bound to so find."  *Id.* § 2.05(2).  This instruction must be given respecting the § 22.05(b) presumption.  *Hendley v. State*, 649 S.W.2d 105 (Tex. App. Tyler, 1983).

16

(Tex. Crim. App. 1941) (threat must be "seriously made").[14] Knowingly pointing a firearm in the direction of an individual when done in obvious jest would not necessarily constitute threatened use of the weapon, even though the pointing might actually place the individual in imminent danger of serious bodily injury. Certainly, to convict under section 22.05(a)–or to invoke the section 22.05(b) presumption–the trier of fact would *not* be required to find that by knowingly pointing the weapon the defendant "threatened use" of it against the victim. It is plain, then, that section 22.05(a) does not have "as an element" that the defendant "threatened use of a deadly weapon" against the victim.

In sum, a conviction for violating section 22.05(a) is not a conviction of a "crime of domestic violence" for purposes of section 922(g)(9) because section 22.05(a) is not "an offense that . . . has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon," against the victim, as required by section 921(a)(33)(A).

We turn now to the remaining purported crime of domestic violence alleged in the indictment, namely the conviction for violation of section 22.07(a)(2). This offense is committed if the defendant "threatens to commit any offense involving violence to any person or

_____

[14]While under Texas law "[a] threat can be communicated by action or conduct as well as words," *Horn v. State*, 647 S.W.2d 283, 284 (Tex. Crim. App. 1983), nevertheless there must be some communication of the threat. *McGowan v. State*, 664 S.W.2d 355, 357-58 (Tex. Crim. App. 1984); *Benjamin v. State*, 621 S.W.2d 617, 619 (Tex. Crim. App. 1981); *Mitchell v. State*, 543 S.W.2d 637 (Tex. Crim. App. 1976).

17

property with intent to . . . place any person in fear of imminent serious bodily injury." *Id*. The offense does not have as an element "the use or attempted use of physical force." Obviously, section 22.07(a)(2) does not require actual "use" of physical force, but only threatened use (of violence). It may be committed by leaving a verbal message on a telephone answering machine. *Cook v. State*, 940 S.W.2d 344 (Tex. App.-Amarillo 1997, p.d.r. ref'd). Nor does section 22.07(a)(2) require the "attempted use of physical force." Attempt requires an intent to commit the attempted act *and* a substantial step, beyond mere preparation, toward committing it. *United States v. Thompson*, 130 F.3d 676, 688 (5th Cir. 1997); 21 Am. Jur. 2d *Criminal Law* §§ 176, 177. By contrast, "it is immaterial to the" section 22.07(a)(2) "offense whether the accused had the capability or the intention to carry out his threat," and "it is not necessary that the victim or anyone else was actually placed in fear of imminent serious bodily injury." *Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim. App. 1982); *Cook* at 347. Nor does section 22.07(a)(2) have as an element "the threatened use of a deadly weapon." Nothing in section 22.07(a) even mentions a weapon (or any synonym thereof), much less a deadly weapon.[15]

Because section 22.07(a)(2) is not "an offense that . . . has as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon" against the victim, as required by

---

[15]Compare Texas Penal Code § 22.02(a)(2) (a person commits aggravated assault if he "uses or exhibits a deadly weapon during the commission of the assault").

18

section 921(a)(33)(A), it is not a crime of domestic violence for purposes of section 922(g)(9).

## Conclusion

Because the indictment on its face reflects as a matter of law that neither of the only two predicate offenses alleged in the count of conviction for violating section 922(g)(9) was a "crime of domestic violence" as required by that section and section 921(a)(33)(A), White's conviction is reversed and the cause is remanded for proceedings consistent herewith.

REVERSED and REMANDED