REVISED

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 4, 2025

Lyle W. Cayce
Clerk

No. 23-10579

—————————

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

KENLEONE JOE NYANDORO,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:22-CR-117-1

———————————————————————

Before STEWART, CLEMENT, and WILLETT, *Circuit Judges*.

DON R. WILLETT, *Circuit Judge*:

Our prior panel opinion, *United States v. Nyandoro*, 140 F.4th 714 (5th Cir. 2025), is WITHDRAWN and the following opinion is SUBSTITUTED:

Kenleone Joe Nyandoro pleaded guilty to possessing a firearm while unlawfully using a controlled substance. In return, he secured an unusually generous plea deal: the government permitted him to enter a rehabilitation program and agreed to drop the charges if he successfully completed it. But

No. 23-10579

Nyandoro failed to hold up his end of the bargain. He was removed from the program after being arrested for fleeing from police. With dismissal off the table, the case moved forward to sentencing.

But less than two months before sentencing, Nyandoro moved to withdraw the guilty plea he had entered nearly ten months earlier. He argued that the statute he pleaded guilty under is unconstitutional. The district court denied the motion. On appeal, Nyandoro raises two arguments. First, he contends the district court should have permitted him to withdraw the plea. Second, he claims the court should never have accepted it in the first place. Neither argument holds up. The district court carefully considered the factors governing plea withdrawal and did not abuse its discretion. And the second argument runs headlong into Nyandoro's appeal waiver.

Accordingly, we AFFIRM the district court's judgment.

I

In July 2021, police officers responded to reports of gunfire.[1] Upon arrival, they heard gunshots and followed the sound into a "heavily wooded area" where they encountered Nyandoro and two other men. Nyandoro fled but was quickly apprehended. The officers spotted the butt of a Smith & Wesson pistol protruding from his jacket pocket—a firearm later confirmed to have been stolen from the police department.

The next day, officers executed a search warrant at Nyandoro's residence. Inside, they found a small amount of marijuana, drug paraphernalia, and an empty Kel Tec firearm box in the bedroom. They also

_____

[1] These background facts are drawn from the Presentence Investigation Report ("PSR"). A PSR "generally has sufficient indicia of reliability," *United States v. Moton*, 951 F.3d 639, 645 (5th Cir. 2020), and Nyandoro did not object to any of its factual findings.

discovered a Smith & Wesson M&P 15–22 rifle under the mattress and a Franklin Armory rifle in the closet, along with several 30-round magazines. A search of Nyandoro's vehicle turned up four small baggies of marijuana, and officers recovered another baggie from the driveway.

During a post-arrest interview, Nyandoro admitted to discharging a firearm in the woods. As for the rifle found in his room, he initially claimed to have purchased it at a gun show, but later recanted and refused to say where he had obtained it. He denied distributing marijuana but admitted using it daily.

Nyandoro was later arrested and charged with possessing a firearm as an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3). His initial drug test was positive for marijuana, though subsequent tests came back negative. Still, within a month, he was diagnosed with a severe cannabis-use disorder.

On May 31, 2022, Nyandoro filed a "factual resume" stipulating to the following:

> In or about July 2021, in the Fort Worth Division of the Northern District of Texas, the defendant, Kenleone Joe Nyandoro, being an unlawful user of a controlled substance—that is marijuana—did knowingly possess in and affecting interstate commerce a Smith and Wesson 9mm bearing serial number FWN5039.

> More specifically, on July 202 [sic], 2021, officers detained Kenleone Joe Nyandoro was [sic] in possession of a Smith and Wesson 9mm bearing serial number FWN5039, bearing serial number 311-29882 [sic]. At the time of his possession of this firearm, Nyandoro was a consistent user of marijuana. Nyandoro admits that these firearms each traveled in interstate commerce.

No. 23-10579

Alongside the factual resume, Nyandoro entered into a plea agreement. In exchange for his guilty plea, the government allowed him to participate in the Sentencing to Equip People for Success ("STEPS") program. If Nyandoro successfully completed the program within 24 months, the government would join a motion to withdraw his guilty plea and dismiss all charges, and the district court agreed to grant that request. But if Nyandoro failed to complete the program—either by failing out or voluntarily withdrawing—he would forfeit the opportunity to withdraw his plea, and the case would proceed to sentencing. Nyandoro also acknowledged that his plea was "freely and voluntarily made."

As part of the plea agreement, Nyandoro also waived his right to appeal "the conviction, sentence, fine and order of restitution or forfeiture," subject to certain exceptions. Specifically, he reserved the right "(a) to bring a direct appeal of (i) a sentence exceeding the statutory maximum punishment, or (ii) an arithmetic error at sentencing, (b) to challenge the voluntariness of the defendant's plea of guilty or this waiver, and (c) to bring a claim of ineffective assistance of counsel."

A magistrate judge held a notice and consent hearing, during which Nyandoro confirmed that he understood the nature and essential elements of the offense and admitted to committing it. The magistrate judge further confirmed that Nyandoro entered the plea agreement voluntarily and without coercion; that he understood he would not be permitted to withdraw his plea if he failed to complete the STEPS program; and that he had fully reviewed, discussed with counsel, and voluntarily accepted the plea agreement's appeal waiver. Nyandoro also affirmed that the factual resume was accurate and that he understood its contents. Based on these findings and assurances, the magistrate judge concluded that Nyandoro was "fully competent and capable of entering an informed plea and that his plea of guilty to the charge or charges against him [wa]s a knowing and a voluntary plea, supported by an

independent basis in fact, containing each of the essential elements of the offenses charged." The magistrate judge recommended that the district court accept the plea, and the district court did so.

For six months, Nyandoro participated in the STEPS program. But in December 2022, he was pulled over by police officers who detected the scent of air freshener coming from his vehicle and noticed a backpack in the back seat. Aware that air freshener is often used to mask the scent of drugs, the officers asked Nyandoro to step out of the vehicle. He became "visibly nervous," asked whether he was under arrest, and began questioning why he was being asked to exit. Then he fled—reaching speeds exceeding 100 miles per hour. Officers later arrested him at his home and found a baggie containing unspecified drug residue in his car.[2] Nyandoro was arrested and charged with evading arrest in a vehicle.

Following this incident, the government moved to revoke Nyandoro's pretrial release and remove him from the STEPS program. The magistrate judge granted the motion, finding that Nyandoro "ha[d] not satisfactorily completed the requirements of the STEPS program," and returned the case to the district court for sentencing.

More than two months later—after the PSR had been filed and sentencing scheduled—Nyandoro moved to withdraw his guilty plea. He argued that withdrawal was warranted because § 922(g)(3) is unconstitutional under the Second and Fifth Amendments.

The district court considered the motion at sentencing. It correctly recognized that whether to permit withdrawal required weighing the seven

_____

[2] According to the Probation Office's Report of Violation of Conditions of Pretrial Release, officers found "an open container of liquor, a small trace of marijuana, and the handle part of a handgun in the vehicle."

factors set out in *United States v. Carr*.[3] After conducting that analysis, the court found the factors favored the government and denied Nyandoro's motion. It then sentenced him to 51 months' imprisonment and three years of supervised release. Nyandoro appealed.

## II

Nyandoro contends the district court erred in two respects: (1) by denying his motion to withdraw his guilty plea, and alternatively, (2) by accepting the plea in the first place—arguing that the factual basis was insufficient and that the court misadvised him on the nature of the offense.

## A

Nyandoro first argues that the district court erred in denying his motion to withdraw his guilty plea.

He filed that motion nearly ten months after initially pleading guilty— by which time he had already spent six months in the STEPS program, failed out, had sentencing scheduled, and reviewed the Probation Office's completed PSR. Still, Nyandoro argued that withdrawal was proper because, in his view, § 922(g)(3) is unconstitutional—both facially and as applied— under two theories: that it is impermissibly vague under the Due Process Clause, and that it unlawfully restricts firearm possession under the Second Amendment.[4]

---

[3] 740 F.2d 339, 343–44 (5th Cir. 1984).

[4] Because the government hasn't invoked Nyandoro's appeal waiver against this claim, we reach the merits. *See United States v. Story*, 439 F.3d 226, 231 (5th Cir. 2006) ("In the absence of the government's objection to [the defendant's] appeal based on his appeal waiver, the waiver is not binding because the government has waived the issue.").

"[T]here is no absolute right to withdraw a guilty plea before the imposition of sentence," and the decision whether to allow withdrawal "is within the sound discretion of the trial court."[5] District courts are vested with "broad discretion" in resolving such motions[6] and may grant relief only if the defendant demonstrates a "fair and just reason" for withdrawing his plea.[7] To that end, courts apply a totality-of-circumstances analysis guided by seven non-dispositive factors:[8] "(1) whether the defendant has asserted his innocence; (2) whether the government would suffer prejudice if the withdrawal motion were granted; (3) whether the defendant delayed in filing his withdrawal motion; (4) whether the withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available to the defendant; (6) whether the original plea was knowing and voluntary; and (7) whether withdrawal would waste judicial resources."[9]

The district court found that the first factor (Nyandoro's assertion of innocence) favored him, and that the fourth factor (inconvenience to the court) was neutral. But it determined that the remaining factors weighed against withdrawal and denied the motion. Nyandoro challenges those conclusions but falls well short of showing that the district court abused its discretion.[10]

---

[5] *Carr*, 740 F.2d at 344 (citation omitted).

[6] *United States v. Rinard*, 956 F.2d 85, 88 (5th Cir. 1992).

[7] *United States v. Strother*, 977 F.3d 438, 443 (5th Cir. 2020) (quoting FED. R. CRIM. PROC. 11(d)(2)(B)).

[8] *Id.*

[9] *Id.* (citing *Carr*, 740 F.2d at 343–44).

[10] *Id.* ("We review a district court's denial of a motion to withdraw a guilty plea for abuse of discretion." (citation omitted)).

We start with the second factor: whether the government would suffer prejudice from a plea withdrawal. The government argued that it would—explaining that withdrawal would require it to "reinitiate the case from the beginning, witnesses, agents, everything." Nyandoro dismisses that as "generalized 'prejudice'" inherent in any plea withdrawal. But he overlooks two critical points. First, he waited nearly ten months before seeking withdrawal—an extended delay that could exacerbate the government's burden in prosecuting this case. Second, he offers no meaningful rebuttal to the government's assertion of prejudice.[11] In any event, even if Nyandoro were correct that the government faces no prejudice, "the second factor is not such a critical factor to the overall *Carr* analysis that would alone merit withdrawal."[12]

We next turn to the third factor: whether Nyandoro delayed in filing his withdrawal motion. The district court measured Nyandoro's delay from the Supreme Court's decision in *New York State Rifle & Pistol Association v. Bruen*,[13] making it roughly nine months[14]—a length of time that weighs decisively in the government's favor under our precedent.[15] Nyandoro

---

[11] *See id.* at 447 ("[Defendant] argues on appeal that the government has failed to show how it would be prejudiced by withdrawal of [his] plea, but he does not directly refute the government's assertions.").

[12] *United States v. Landreneau*, 967 F.3d 443, 450 (5th Cir. 2020); *see also United States v. McKnight*, 570 F.3d 641, 649 (5th Cir. 2009) ("[T]he absence of prejudice to the Government does not necessarily justify reversing the district court's decision.").

[13] 597 U.S. 1 (2022).

[14] Although nearly ten months passed between Nyandoro's plea and his withdrawal motion, *Bruen* was decided just two weeks after he entered his plea. Adjusting for that timing, the district court correctly calculated the relevant delay as closer to nine months than ten.

[15] *See Strother*, 977 F.3d at 447 ("[T]hree months between the entering of a guilty plea and the filing of a motion to withdraw constitutes a significant delay that weighs against

contends the court miscalculated. He argues the clock should have started not at *Bruen*, but at our later decision in *United States v. Rahimi*[16]—which would reduce the delay to less than two months. On Nyandoro's account, it was *Rahimi*'s "analytical shift" that first made his constitutional challenge viable. But Nyandoro cites no authority for the proposition that, when a withdrawal motion rests on intervening precedent, delay should be measured from the date of that precedent rather than from the date the plea was entered.

In any event, Nyandoro's argument fails on its own terms. At sentencing, he placed at least as much emphasis on *Bruen* as on *Rahimi*. He argued that his motion to withdraw "is based primarily on the rulings in *Bruen*, and most recently, *Rahimi*." He then asserted that § 922(g)(3) is unconstitutional "[u]nder the *Bruen* framework," and described *Bruen* as the moment "when this case was really picking up steam." Given Nyandoro's own framing of the constitutional landscape, the district court did not abuse its discretion in measuring delay from *Bruen* rather than *Rahimi*.

Next, Nyandoro contends that factors four and seven favor him. He argues that the district court would benefit—and that judicial resources would be conserved—if he were permitted to withdraw his plea, because his "meritorious" constitutional challenges might result in dismissal of the indictment. But this argument rests more on speculation than substance. Whether withdrawal would ultimately conserve judicial resources is, at best, uncertain. And when it comes to judicial efficiency, the district court's judgment is owed particular deference, as it "is in the best position to know

_____

granting withdrawal."); *see also Carr*, 740 F.2d at 345 (22-day delay "was not prompt[]"); *Rinard*, 956 F.2d at 88–89 (69-day delay weighed against withdrawal).

[16] 61 F.4th 443 (5th Cir. 2023) *rev'd and remanded* 602 U.S. 680 (2024).

the effect that the withdrawal had on its resources."[17] Nyandoro's theory that dismissal would follow in lieu of trial is wishful speculation.[18] It certainly does not demonstrate that the district court abused its discretion in concluding that withdrawal would waste—not preserve—judicial resources. In any event, even assuming the court's finding on inconvenience (factor four) was neutral, the fact remains that the court had already reviewed the PSR and prepared for sentencing.[19] That procedural posture makes the inconvenience far from negligible.

Finally, Nyandoro contests the district court's finding on factor six: whether his plea was knowing and voluntary. But he concedes that "at the time," his plea was both knowing and voluntary. He now argues that a subsequent change in the law renders his plea retroactively unknowing, reasoning that a plea "a fortiori cannot have been knowingly and voluntarily made." But Nyandoro provides no authority for that proposition, which is squarely foreclosed by our precedent. As we have long held, "a voluntary plea of guilty intelligently made in the light of the then-applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise."[20] A knowing and voluntary plea includes the inherent risk that the law may evolve unfavorably—and that is especially true when a defendant, like Nyandoro, agrees to an appeal waiver. It is part of the

---

[17] *McKnight*, 570 F.3d at 649.

[18] *See United States v. Daniels*, 124 F.4th 967, 977 (5th Cir. 2025) (noting that even after the defendant's successful as-applied constitutional challenge to § 922(g)(3), the government remained free to retry the case).

[19] *See United States v. Lord*, 915 F.3d 1009, 1015 (5th Cir. 2019) ("When, as here, the district court has already reviewed the PSR and other materials, a motion to withdraw is disruptive to the trial docket and inconveniences the court.").

[20] *United States v. Barnes*, 953 F.3d 383, 387 (5th Cir. 2020) (quotation marks and citation omitted).

plea-bargain calculus that the defendant "assumed the risk that he would be denied the benefit of future legal developments."[21] The fact that the legal landscape may have shifted after Nyandoro entered his guilty plea does not undo the knowing and voluntary nature of his plea at the time it was made.

In sum, Nyandoro has not carried his burden to show that the district court abused its discretion in weighing the *Carr* factors and denying his motion to withdraw his plea.

B

Nyandoro's fallback argument is that the district court erred in accepting his guilty plea at the outset. Under Federal Rule of Criminal Procedure 11, a court may not accept a guilty plea unless it determines that the plea rests on a sufficient factual basis and that the defendant understands the nature of the charge.[22] Nyandoro contends that because § 922(g)(3) is unconstitutional—both facially and as applied to him—his conviction lacked a lawful foundation and thus failed to meet Rule 11's requirements. The government counters that this challenge is foreclosed by Nyandoro's appeal waiver. We agree.

"The right to appeal a conviction and sentence is a statutory right, not a constitutional one, and a defendant may waive it as part of a plea

---

[21] *Id.* at 388 (citation omitted); *see also Cook v. United States*, 84 F.4th 118, 124 (2d Cir. 2023) ("[T]he possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements. This principle follows from the fact that plea agreements, like all contracts, allocate risk between the parties—and we are not free to disturb the bargain the parties strike." (cleaned up)).

[22] Fed R. Crim. Proc. 11(b)(1)(G), (b)(3); *see also United States v. Alvarado-Casas*, 715 F.3d 945, 949 (5th Cir. 2013).

agreement."[23] In assessing the validity of such waivers, "we conduct a two-step inquiry: (1) whether the waiver was knowing and voluntary and (2) whether the waiver applies to the circumstances at hand, based on the plain language of the agreement."[24]

Nyandoro advances several reasons why his appeal waiver should not bar his challenge. He contends that: (1) the waiver doesn't extend to factual-insufficiency claims; (2) his plea was not knowing and voluntary; (3) the waiver's language doesn't encompass this particular challenge; (4) the waiver is inapplicable because his sentence exceeds the statutory maximum; and (5) enforcing the waiver would result in a miscarriage of justice.

We recently confronted—and rejected—these same arguments in *United States v. Jones*.[25] There, the defendant also pleaded guilty to violating § 922(g)(3), signed an identical appeal waiver, challenged the district court's acceptance of his guilty plea, and advanced the very same waiver-based objections that Nyandoro presses here. In rejecting those arguments, we held that the defendant "unambiguously waived in his plea agreement his right to appeal."[26] While *Jones* is unpublished and thus not binding, it offers instructive guidance.[27] And as in *Jones*, we conclude that Nyandoro's appeal

---

[23] *United States v. Baymon*, 312 F.3d 725, 727 (5th Cir. 2002); *see also United States v. Kelly*, 915 F.3d 344, 348 (5th Cir. 2019) ("A criminal defendant may waive his statutory right to appeal in a valid plea agreement." (quoting *United States v. Pleitez*, 876 F.3d 150, 156 (5th Cir. 2017)).

[24] *Kelly*, 915 F.3d at 348 (quoting *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005)).

[25] No. 23-10841, 2024 WL 3811760 (5th Cir. Aug. 14, 2024).

[26] *Id.* at *2.

[27] *See United States v. Wilkerson*, 124 F.4th 361, 368 (5th Cir. 2024) (citing *Avelar-Oliva v. Barr*, 954 F.3d 757, 771 (5th Cir. 2020)).

No. 23-10579

waiver forecloses his challenge to the district court's acceptance of his guilty plea.

1

Nyandoro's first—and strongest—argument for sidestepping his appeal waiver is that his claim fits within the so-called "factual insufficiency" exception. We have "repeatedly held that 'even if there is an unconditional plea of guilty or a waiver of appeal provision in a plea agreement, this Court has the power to review if the factual basis for the plea fails to establish an element of the offense which the defendant pled guilty to appeal waivers in that context.'"[28] This exception does not render an appeal waiver void whenever a defendant disputes the factual basis of his conviction. Rather, it is a narrow carveout, crafted "to protect a defendant who may plead guilty with an understanding of the nature of the charge, but without realizing that his conduct does not actually fall within the definition of the charged crime."[29]

In keeping with its narrow purpose, the factual-insufficiency exception to an appeal waiver applies only when a defendant claims that his admitted conduct fails to satisfy the statutory elements of the offense.[30] Courts assessing such claims must "compare the *elements of the crime* for which [the defendant] was convicted to the conduct he admitted in the

---

[28] *United States v. Ortiz*, 927 F.3d 868, 873 (5th Cir. 2019) (quoting *United States v. Baymon*, 312 F.3d at 727; *see also Alvarado-Casas*, 715 F.3d at 951 ("[Defendant] may challenge the factual basis underlying his guilty plea notwithstanding his unconditional appeal waiver.").

[29] *United States v. Hildenbrand*, 527 F.3d 466, 474 (5th Cir. 2008).

[30] *See United States v. Bates*, 2023 WL 4542313, at *3 (5th Cir. July 14, 2023) (describing "that the factual basis needs to support that the facts, as understood by the defendant, support *the elements of the offense*." (emphasis added)).

factual basis."[31] Take *United States v. Ortiz*, for instance. There, we distinguished between a true factual-insufficiency claim—where the admitted facts fail to establish the crime's elements—and a claim that the facts, while satisfying the elements, also support an affirmative defense.[32] We held that although a successful self-defense argument might warrant reversal, it does not trigger the factual-insufficiency exception because it does not call into question whether the statutory elements were met.[33] In short, the exception targets statutory failure—not affirmative justification. It applies only when, accepting the factual basis as true, the admitted conduct "fails to establish the essential elements of the crime of conviction."[34] That is how we have consistently cabined and applied the factual-insufficiency exception.[35]

Because the factual-insufficiency inquiry is statutory in nature, a constitutional challenge to a statute—like an affirmative defense—is not a factual-insufficiency claim. A defendant arguing that the statute of conviction is unconstitutional does not contend that the statute fails to reach his conduct or that the elements of the offense were unmet. To the contrary, such a

---

[31] *United States v. Avalos-Sanchez*, 975 F.3d 436, 440 (5th Cir. 2020) (emphasis added); *see also Hildenbrand*, 527 F.3d at 474–75.

[32] 927 F.3d 868, 873–74 (5th Cir. 2019).

[33] *Id.* at 876–78.

[34] *United States v. Trejo*, 610 F.3d 308, 312 (5th Cir. 2010).

[35] *See, e.g.*, *Baymon*, 312 F.3d at 728 (reviewing a factual-sufficiency challenge notwithstanding an appeal waiver where the defendant argued that the factual basis failed to establish he was a "public official" under 18 U.S.C. § 201(a)); *Trejo*, 610 F.3d at 313–14 (reviewing whether the factual basis established the "intent to promote" element of 18 U.S.C. § 1956(a)(2)(A)); *Alvarado-Casas*, 715 F.3d at 950–51 (reviewing whether defendant's conduct satisfied the elements of 8 U.S.C. § 1324(a)(1)(B)(iii)); *United States v. Walker*, No. 24-10588, 2025 WL 799347, at *1 (5th Cir. Mar. 13, 2025) (reviewing whether the defendant's factual resume alleged facts sufficient to support a conviction under 18 U.S.C. § 2252A(a)(1)).

challenge presumes that the statute *does* apply to the defendant's conduct; the argument is simply that Congress may not constitutionally proscribe that conduct. If the defendant's conduct did not fall within the statute's reach, there would be no need to test the statute's constitutional limits.[36]

Indeed, a constitutional challenge cannot fall within the factual-insufficiency exception because, unlike factual-insufficiency claims, constitutional challenges can be waived. We made that clear just last year in *United States v. Miles*. There, the defendant sought to invalidate his felon-in-possession conviction under § 922(g)(1) by arguing that the statute was unconstitutional as applied to short-barreled rifles.[37] He claimed that his appeal waiver was ineffective because a defendant cannot waive the right to challenge the constitutionality of his statute of conviction. We disagreed, holding that this argument was "foreclosed" and that the defendant had "waived the right to press his Second Amendment claim on appeal."[38] *Miles* thus confirms what logic already suggests: because constitutional challenges are waivable, they are categorically distinct from factual-insufficiency claims.

This distinction was underscored in *United States v. Johnson*.[39] There, the defendant pleaded guilty to arson under 18 U.S.C. § 844(i) but argued on appeal that his conduct did not substantially affect interstate commerce, and

---

[36] *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981) ("[P]rior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision."); *see also Neese v. S. Ry. Co.*, 350 U.S. 77, 78 (1955).

[37] No. 22-10932, 2024 WL 1827825, at *1 (5th Cir. Apr. 26, 2024), *cert. denied*, 145 S. Ct. 318 (2024).

[38] *Id.*

[39] 194 F.3d 657 (5th Cir. 1999), *vacated and remanded*, 530 U.S. 1201, 120 (2000), *prior opinion reinstated with modification*, 246 F.3d 749 (5th Cir. 2001).

thus there was an insufficient basis for his conviction.[40] We explained that the interstate-commerce requirement served dual roles: it functioned both as a non-jurisdictional statutory element of the offense and as a basis for Congress's constitutional authority to enact the statute.[41] We held that by entering an unconditional guilty plea, the defendant had waived any as-applied constitutional challenge to the statute based on lack of congressional authority.[42] However, we also made clear that the defendant could still pursue his argument "as a challenge to the sufficiency of the factual basis for the interstate commerce element of the arson crime to which he pleaded guilty."[43] *Johnson* thus illustrates the line that separates waivable constitutional challenges from non-waivable factual-insufficiency claims.[44] A defendant may still argue that his conduct does not satisfy the statutory elements of the offense. But he may not—having pleaded guilty and waived his right to appeal—invoke a constitutional defense on the ground that his conduct was beyond Congress's power to criminalize.

Applying those principles here, Nyandoro cannot invoke the factual-insufficiency exception because he does not contest whether his conduct

---

[40] *Id.* at 658.

[41] *Id.* at 659.

[42] *Id.*

[43] *Id.*

[44] To be sure, the Supreme Court clarified in *Class v. United States*, 583 U.S. 174, 803 (2018), that a guilty plea alone doesn't bar a defendant from raising a constitutional challenge to his conviction on direct appeal—overruling that part of *Johnson*'s rationale. But we don't rely on *Johnson* for that point because Nyandoro not only pleaded guilty but also waived his right to appeal. We invoke *Johnson* solely to underscore the difference between contesting a statute's constitutionality and contesting a conviction for failure to establish its elements.

satisfies the statutory elements of § 922(g)(3).[45] A defendant cannot simply recite the factual-insufficiency "boilerplate as an appeal-authorizing escape hatch."[46] And while Nyandoro attempts to cast his claim in factual-insufficiency terms, his briefing makes clear that his challenge rests entirely on the constitutionality of § 922(g)(3)—not on whether his conduct violated the statute.

Indeed, Nyandoro's own words confirm the nature of his claim. In his opening brief, he argues that the district court erred in accepting his guilty plea "because of three constitutional infirmities latent in § 922(g)(3)."[47] He goes on to explain that "the factual basis failed to establish a constitutionally valid offense." And he acknowledges that his "claim of insufficiency derives from his constitutional claims."

To be sure, Nyandoro discusses the statutory text of § 922(g)(3) and various judicial interpretations of its elements. But he does so only to support his argument that the statute is unconstitutionally vague. For instance, he notes that the statute never defines "unlawful user of . . . any controlled substance," rendering it "impossible for ordinary persons to understand when the statute might apply to their level of drug use." But critically, he never argues that his own conduct fails to meet that statutory standard—only that the standard itself is unconstitutionally vague.[48]

---

[45] The elements of the offense are: (1) the defendant is an unlawful user of a controlled substance; (2) he knowingly possessed a firearm; and (3) the firearm possession was in or affected interstate commerce. *See United States v. Perez*, 179 F. App'x 234, 235 (5th Cir. 2006) (quoting 18 U.S.C. § 922(g)(3)).

[46] *United States v. Meredith*, 52 F.4th 984, 987 (5th Cir. 2022).

[47] According to Nyandoro, those three constitutional infirmities are violations of the Second Amendment, the Due Process Clause, and the Commerce Clause.

[48] As part of his as-applied vagueness argument, Nyandoro asserts that the factual basis of his plea "fail[s] to fill in the blanks left by the statutory language." But that is, at

No. 23-10579

Indeed, it was only after the government highlighted Nyandoro's failure to raise a true factual-insufficiency argument in his opening brief that he addressed statutory sufficiency at all.[49] In his reply brief—for the first time—Nyandoro discusses our prior interpretations of § 922(g)(3) and suggests that the statutory definition of "unlawful user" should be narrowly construed to mean present use or intoxication, in order to align with current Second Amendment precedent. Even if that belated argument could qualify as a proper factual-insufficiency claim, it arrives too late. "[A]n argument cannot be raised for the first time in a reply brief."[50]

Nyandoro disputes the characterization that his opening brief presents a constitutional challenge. He contends that he never explicitly argued that his conviction was unconstitutional—only that the district court erred in accepting his plea. Even if that distinction is technically accurate, it is legally meaningless. By Nyandoro's own account, the reason the district court erred in accepting his guilty plea is because § 922(g)(3) is unconstitutional. He expressly states that his "claim of insufficiency derives from his constitutional claims." Were we to accept Nyandoro's theory, a defendant could always circumvent an appeal waiver by reframing a constitutional challenge as an attack on the factual basis for the plea. Such a

---

bottom, a constitutional challenge—not a statutory one. And while an as-applied vagueness argument may resemble a factual-insufficiency claim, the two are conceptually distinct. A vagueness challenge asks whether a criminal statute "fails to give ordinary people fair notice of the conduct it punishes," not whether the defendant's conduct satisfies the statutory elements. *United States v. De Bruhl*, 118 F.4th 735, 745 (5th Cir. 2024).

[49] The government rightly observed that "Nyandoro does not argue that his conduct falls outside the scope of Section 922(g)(3). Rather, he contends that, while his conduct falls within Section 922(g)(3)'s scope, Section 922(g)(3) is unconstitutional."

[50] *Allen v. Hayes*, 65 F.4th 736, 746 (5th Cir. 2023); *see also United States v. Muhammad*, 14 F.4th 352, 363 n.3 (5th Cir. 2021) ("Litigants may not raise arguments for the first time in a reply brief.").

No. 23-10579

transparent workaround would gut our settled precedent recognizing that constitutional challenges can be waived.[51] A defendant cannot convert an otherwise barred constitutional claim merely by repackaging it as a plea-defect argument.  To invoke the factual-insufficiency exception, a defendant must assert that his conduct fails to satisfy the elements of the statute—not that the statute is unconstitutional.

Because factual-insufficiency claims are limited to statutory challenges, and because Nyandoro raised no such challenge in his opening brief, the appeal-waiver exception cannot salvage his appeal.

2

Having dispensed with Nyandoro's factual-insufficiency argument, we turn to his remaining arguments for avoiding the appeal waiver—none of which has merit.

First, Nyandoro contends that his plea was not knowing and voluntary. "A waiver is both knowing and voluntary if the defendant indicates that he read and understood the agreement and the agreement contains an explicit, unambiguous waiver of appeal."[52] Nyandoro does not dispute—nor could he—that he knowingly and freely pleaded guilty after being fully advised by the magistrate judge as to the nature and essential elements of the offense. Instead, he argues that his plea was involuntary because the district court failed to alert him to the statute's purported unconstitutionality.[53] But "a voluntary plea of guilty intelligently made in the

---

[51] *See Miles*, 2024 WL 1827825, at *1.

[52] *Kelly*, 915 F.3d at 348 (cleaned up).

[53] The duty to advise a defendant of the nature of the charge pertains only to the elements of the offense—not to the statute's constitutionality. *See United States v. Lujano-Perez*, 274 F.3d 219, 224 (5th Cir. 2001) ("Rule 11's requirement that defendants

light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise."[54] By entering into a plea agreement with an appeal waiver, Nyandoro "assumed the risk that he would be denied the benefit of future legal developments."[55] To the extent Nyandoro is arguing that he was misinformed because of an alleged factual insufficiency, that claim is simply a repackaged version of his earlier argument—an argument we have already rejected.[56] In short, there is no serious question that Nyandoro's plea was both knowing and voluntary.[57]

Second, Nyandoro invokes *United States v. White*,[58] arguing that the language of his plea agreement does not reflect an intelligent waiver of his right to appeal. But *White* is inapposite several times over. To start, the appeal-waiver language in *White* differs materially from that in Nyandoro's plea agreement.[59] Moreover, the defendant in *White* challenged the sufficiency of the indictment on its face—a jurisdictional defect not present

_____

understand the 'nature of the charge' against them refers to the elements of the offense." (citation omitted)).

[54] *Barnes*, 953 F.3d at 387 (citing *Brady v. United States*, 397 U.S. 742, 757 (1970)); *see also United States v. Jones*, 134 F.4th 831, 837–38 (5th Cir. 2025) (rejecting the argument that a waiver was not knowing and intelligent based on subsequent changes in the law).

[55] *Barnes*, 953 F.3d at 388 (citation omitted).

[56] *See Avalos-Sanchez*, 975 F.3d at 443.

[57] *See Jones*, 2024 WL 3811760, at *2 (finding in identical circumstances that the defendant's plea was knowing and voluntary).

[58] 258 F.3d 374 (5th Cir. 2001).

[59] In *White*, the defendant waived "any appeal . . . of any error which may occur surrounding substance, procedure, or form of the conviction and sentencing," subject only to exceptions for Sentencing Guidelines determinations and issues preserved in his motion to dismiss. *Id.* at 380. By contrast, Nyandoro waived his right "to appeal the conviction, sentence, fine and order of restitution or forfeiture," reserving only challenges to (1) a sentence exceeding the statutory maximum, (2) an arithmetic error at sentencing, (3) the voluntariness of the plea, and (4) ineffective assistance of counsel.

here.[60] And most significantly, the defendant in *White* expressly preserved his challenge in a pretrial motion to dismiss.[61] *White* offers Nyandoro no support.[62]

Third, Nyandoro argues that his claim survives the appeal waiver under the exception for sentences that exceed the statutory maximum. He contends that because his conviction lacked a sufficient basis, any sentence imposed necessarily exceeds the statutory ceiling. But that logic would nullify appeal waivers entirely, allowing any defendant to bypass one simply by challenging the validity of his conviction. That is not the law.[63] The statutory-maximum exception applies only when a sentence exceeds "the upper limit of punishment that Congress has legislatively specified for violations of a statute."[64] Nyandoro makes no such allegation here.

Fourth and finally, Nyandoro urges us to recognize a "miscarriage of justice" exception to his appeal waiver. As Nyandoro concedes, we have never adopted such an exception.[65] He nonetheless argues for its application here, citing the importance of his constitutional challenge. But as already noted, we recently reaffirmed that Second Amendment challenges to criminal statutes—the very claim Nyandoro asserts—can be waived in a plea

---

[60] *Id.*

[61] *Id.*

[62] *See also Jones*, 134 F.4th at 836 ("When faced with broad appeal-waiver provisions, we have consistently held that the waivers are enforceable, even when that meant waiving 'the right to challenge both illegal and unconstitutional sentences.'" (citing *Barnes*, 953 F.3d at 385, 389)).

[63] *See id.* at 839–40 (rejecting the argument that the statutory-maximum exception applies whenever a defendant merely claims that the sentence imposed was illegal or invalid).

[64] *Meredith*, 52 F.4th at 987 (quotation marks and citation omitted).

[65] *See United States v. Burns*, 770 F. App'x 187, 191 (5th Cir. 2019).

agreement.[66] Whether or not we should adopt a miscarriage-of-justice exception,[67] applying one in this case would run afoul of our controlling precedent.

### III

In sum, neither of Nyandoro's arguments succeeds. He has not shown that the district court abused its discretion in denying his motion to withdraw his plea. And his contention that the district court should never have accepted the plea—because of the alleged unconstitutionality of § 922(g)(3)—is barred by his knowing and voluntary appeal waiver.

The judgment of the district court is AFFIRMED.

---

[66] *See Miles*, 2024 WL 1827825, at *1.

[67] Nyandoro's failure to offer a principled way to cabin his proposed miscarriage-of-justice exception provides an independent ground for denying his request. *See Jones*, 134 F.4th at 842 (declining to recognize such an exception where the defendant "provide[d] [no] workable explanation for how to narrow its scope, nor . . . show[ed] how the facts of his case warrant[ed] breaking new ground by announcing and applying the exception").